Patrick H. HYATT, Herman O. Caudle and Mary P. Lovingood, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Margaret M. HECKLER, or her successor in office, Secretary of the United States Department of Health and Human Services, Defendant.

No. C–C–83–655–M.

United States District Court, W.D. North Carolina.

March 31, 1989.

Charles M. Sasser, Legal Services of Southern Piedmont, Inc., John Wester, Robinson, Bradshaw & Hinson, P.A., Charlotte, N.C., for plaintiffs.

A. George Lowe, Office of Gen. Counsel, Dept. of HHS, Baltimore, Md., and Jeffrey L. Bishop, Charlotte, N.C., for Dept. of N.C. Human Resources.

## ORDER

McMILLAN, District Judge.

### PROCEDURAL HISTORY

This is a class action brought against the Secretary of the United States Department of Health and Human Services ("Secretary"), challenging the policy of the Social Security Administration ("SSA") of denying and terminating social security benefits in various circumstances, in open violation of applicable decisions of the Fourth Circuit Court of Appeals. The individual plaintiffs and class members are applicants for or former recipients of disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433; 1381–1383c (1982 and Supp. IV 1986).[1]

On February 14, 1984, in the first opinion in this case, *Hyatt v. Heckler*, 579 F.Supp. 985 (W.D.N.C.1984), this court found that the Secretary, in conscious and willful disregard of pertinent controlling decisions of the Fourth Circuit Court of Appeals, was:

(1) Denying claims for social security disability benefits based on hypertension or diabetes mellitus upon the theory that without end-organ damage (to heart, eyes, kidneys or brain), the claimant does not have a "severe impairment";

(2) Denying claims for social security disability benefits based on pain, upon the theory that subjective manifestations of pain cannot be considered disabling unless they are supported by objective clinical findings;

(3) Terminating social security benefits without substantial evidence that the recipient's disability has ceased.

The court ordered the Secretary to: (1) cease immediately the policy of refusing to follow the law of the Fourth Circuit; (2) help identify individuals who may be entitled to relief under the judgment; (3) begin following the law of the Fourth Circuit; and (4) issue written directives to SSA officials and other persons responsible for the administration of social security disability programs in North Carolina, ordering such persons to follow Fourth Circuit standards.

On March 16, 1984, the court certified a class of North Carolina residents, including those residents who had not exhausted their administrative remedies or had not sought judicial review of a final decision of the Secretary pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1982).

The decision cited above was appealed, and on March 20, 1985, the Fourth Circuit Court of Appeals vacated this court's order of injunctive and declaratory relief. *Hyatt v. Heckler*, 757 F.2d 1455 (4th Cir.1985). The Court of Appeals held that the claims of those class members who had not exhausted their administrative remedies, pursuant to 42 U.S.C. § 405(g), before seeking judicial review, must be dismissed. The case was remanded to this court with instructions, among other things, to (1) direct the Secretary to identify and notify certain claimants for initial benefits, and (2) to remand to the Secretary for reconsideration, pursuant to the interim pain standard of Section 3(a) of the 1984 Social Security Disability Benefits Reform Act, the claims of certain class members who met the requirements of 42 U.S.C. § 405(g). On June 9, 1986, the United States Supreme Court granted plaintiffs' petition for writ of certiorari, vacated the opinion of the Fourth Circuit Court of Appeals and remanded to the Fourth Circuit for further consideration in light of *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). *Hyatt v. Bowen*, 476 U.S. 1167, 106 S.Ct. 2886, 90 L.Ed.2d 974 (1986).

---

1. The scope and economic impact of this class action are staggering. As of July 28, 1988, the Secretary had identified and sent notices to approximately 77,000 class members in North Carolina. According to the local SSA Office, the *average* monthly disability benefit in 1988 was $509. A conservative estimate of the potential liability of SSA, for the year 1988 alone, to North Carolina class members is *$470,316,000.*

On remand, the Fourth Circuit Court of Appeals held that exceptional circumstances justified a waiver of the exhaustion of administrative remedies requirement of 42 U.S.C. § 405(g). 807 F.2d 376 (4th Cir. 1986).

On May 22, 1987, the Secretary filed a petition for a writ of certiorari in the Supreme Court. On October 5, 1987, the Supreme Court denied the Secretary's petition for a writ of certiorari. —— U.S. ——, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987).

On December 10, 1987, the court entered an order in which counsel were required to inform the court of the terms of the implementation plan adopted for the readjudication of the claims of *Hyatt* class members, 118 F.R.D. 572. On July 22, 1988, the Secretary filed a report setting forth the required information.

## CURRENT CONTROVERSY

On August 8, 1988, plaintiffs moved for entry of an order enforcing the court's judgment, reported in *Hyatt v. Heckler*, 579 F.Supp. 985 (W.D.N.C.1984), *supra.* Plaintiffs allege that implementation of the plan proposed by the Secretary in a document filed July 28, 1988, if carried out, will accomplish indirectly what the Secretary's policy of "nonacquiescence" sought to do directly; that is, to flout binding precedents of the Fourth Circuit Court of Appeals and a critical feature in the holding of this court in this case. That feature is the direction that the Secretary abide by the ruling in *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980), requiring that the Secretary evaluate the disabling effects of a disability claimant's pain even if the degree or intensity of the pain is shown *only* by *subjective evidence.* 579 F.Supp. at 1002; 757 F.2d at 1462 (4th Cir.1985).[2]

On August 30, 1988, defendant filed a preliminary response to plaintiffs' motion, followed by a full response and a supplemental response filed on September 1, 1988.

On September 1, 1988, plaintiffs filed a supplemental memorandum in support of their motion for enforcement of the court's judgment and decrees. Oral argument was heard by the court on September 7, 1988. On October 7, 1988, the court entered an order finding that the Secretary has not clearly instructed Administrative Law Judges ("ALJ's") to observe and follow Fourth Circuit law as required by the law of this case. The court directed plaintiffs to tender proposed findings in accordance with the October 7, 1988, order, no later than October 31, 1988.

On October 12, 1988, the court received a letter from plaintiff's counsel requesting clarification of the October 7, 1988, order. That letter brought to the court's attention some imprecise language in the October 7 order. The court reviewed the order and found that a *possible* interpretation of that order was that objective medical evidence of an underlying impairment or ailment that could reasonably be expected to cause pain was *not* required for a finding of disabling pain. Under the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A) ("DIBRA") (enacted October 9, 1984, expired January 1, 1987)

**2.** Four types of evidence are referred to within this order. For the purpose of clarity, in the context of this order, they are defined below:

(1) *Subjective evidence of pain, its intensity or degree:* A claimant's personal opinions, feelings and other statements and expressions of the degree, frequency, location, intensity, etc., of pain that he or she experiences.

(2) *Medically acceptable objective evidence of an underlying impairment or ailment:* Proof established by clinical or laboratory diagnostic techniques that demonstrate an underlying impairment or ailment that could reasonably be expected to cause pain. For example, x-rays establishing a broken bone, or a blood test that shows diabetes.

(3) *Objective medical evidence of pain, its intensity or degree:* Objective measurements of the manifestations of pain, including, but not limited to, muscle or nerve deterioration, muscle spasms, or sensory or motor disruption.

(4) *Evidence relating to subjective complaints:* Any evidence other than that described in number 3 above that would corroborate or contradict a claimant's subjective complaints of pain. Such evidence includes, but is not limited to, the type and dosage of pain medication; treatment, other than medication, for relief of pain; and the claimant's daily activities.

and *Myers v. Califano,* 611 F.2d 980, 981–82 (4th Cir.1980), a requirement of medical evidence of the existence of an underlying impairment or ailment that could reasonably be expected to cause pain is acknowledged. This court has consistently respected the *Myers* ruling in this litigation. The court did not intend, in its October 7, 1988, order, to imply any abrogation of the requirement of medical evidence of an underlying impairment.

On October 14, 1988, seeking to clarify the October 7, 1988, order quickly and precisely, pursuant to Rule 60, the court directed plaintiffs to submit a proposed order revised "to the minimum extent necessary to achieve the clarification requested." That revised order was entered on October 21, 1988.

On October 21, 1988, *subsequent* to the entry of the revised order, the court received a motion to file responses to plaintiffs' proposed amended order and proposed instruction. The Secretary alleged that the amended order "far exceeded the statements contained in this court's earlier October 7, 1988 order." In fact, as discussed above, the one purpose and effect of the amended order was to *narrow* statements contained in the earlier order that were unintentionally broad. [Although the court did not receive the Secretary's request until after the amended order was signed, the court has subsequently given full consideration to the Secretary's full response and motion for reconsideration filed on October 31, 1988. However, because the Secretary has already filed an appeal from those orders, this court will not directly address the motion for reconsideration.]

On October 26, 1988, plaintiffs filed proposed findings pursuant to the orders of October 7 and October 21, 1988. Defendant filed his response on November 7, 1988. On November 18, 1988, plaintiffs filed a memorandum in support of the proposed findings and instructions.

The court has carefully reviewed the events, the evidence from the hearings, and pleadings regarding plaintiffs' proposed findings and instructions.

It is regrettably obvious that the Secretary has continued to refuse to take those measures necessary to assure that, in the *Hyatt* reviews, the law of this circuit will apply with full force and effect.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Secretary's most recent indication of his policy views for this case appeared in his July 28, 1988, report to this court. In that report the Secretary provided the text of instructions his North Carolina decisionmakers are to apply in *Hyatt* reviews in which claims are based on pain as a disabling condition.

*At no point in the Hyatt instructions proposed by the Secretary does he state or even acknowledge this court's and the Fourth Circuit's findings, in this case, that the Secretary has refused to apply the binding precedent of this circuit with respect to evaluating pain as a disabling condition.* 579 F.Supp. at 1001; 807 F.2d at 381.

As the Fourth Circuit observed, the Secretary has "found claimants who suffered from medically diagnosed ailments not disabled because their subjective complaints of pain ... were not fully supported by objective clinical findings." 807 F.2d at 379. It is necessary that the Secretary make clear that this practice can not and will not continue. The Secretary's proposed *Hyatt* instructions do not achieve this end.

The fulcrum of the Secretary's policy of pain evaluation, at least since August 20, 1980, has been Social Security Ruling 82–58. This court and the Fourth Circuit have specifically identified that Ruling as underlying the Secretary's failure and refusal to honor Circuit precedent. 579 F.Supp. at 1000; 807 F.2d at 379.

Although the Secretary has announced that, as of July 20, 1988, he has "superseded" SSR 82–58, there are telltale signs of a different intention and a clear indication to the agency adjudicators that no meaningful change has occurred. Indeed, a review of the evidence submitted on the pending mo-

tion indicates that the Secretary fully intends that the critical features of SSR 82–58, insofar as the *Hyatt* reviews are concerned, survive his recent announcement.

For example, the Secretary's July 20, 1988, announcement that SSR 82–58 has been superseded by SSR 88–13, concludes with a statement that the *policy* explained in the new SSR "was effective on August 20, 1980, the date the regulations covering the basic policy in the subject area were effective." As plaintiffs point out, however, the effective date of the "basic policy" explained in SSR 82–58 is *also* August 20, 1980. Consistent with the coincidence of dates, the Secretary's opening statement in SSR 88–13 declares that the purpose of the ruling is "to *reiterate* our policy on the evaluation of pain." (Emphasis added.) Perhaps most significantly, "new" SSR 88–13 makes no explicit mention of the fundamental principle articulated in the Fourth Circuit cases concerning evaluation of pain in disability cases that subjective evidence of pain's intensity or degree can, *by itself,* sustain a finding of disability, if the claimant has established, by medically acceptable objective evidence (*e.g.,* accepted clinical or laboratory techniques), an underlying impairment that could reasonably be expected to cause pain. In fact, SSR 88–13, like many aspects of the Secretary's proposed *Hyatt* instructions, emphasizes the need to search for objective evidence of pain, its intensity or degree, as well as the reliability and superiority of that evidence.

The Secretary's long standing policy with respect to pain evaluation is carried forward, not only in SSR 88–13, but also in a series of other directives that have been applied by the Secretary's decisionmakers in North Carolina, and across the nation. These various rulings, program circulars and Program Operations Manual System (POMS) sections all share the same basic deficiency that is described above. None of them clearly acknowledge that *subjective evidence of pain, its intensity or degree, is an adequate basis for a finding of disability, once medically acceptable objective evidence has established an underlying impairment capable of causing pain.* These directives also share in com-

mon a great deal of the actual language of SSR 82–58—indeed, significant, relevant parts of them are verbatim copies of parts of SSR 82–58. The Secretary's proposed *Hyatt* instructions, in turn, rely upon, paraphrase and quote verbatim from the very directives that perpetuate the unlawful policy of SSR 82–58. The obvious result of this network of directives built on the policy of SSR 82–58 is a message to social security decisionmakers in North Carolina that there has been no change, much less a court-ordered change, in the pain evaluation standard to be applied in the *Hyatt* reviews.

The Secretary's October 31, 1988, response to the plaintiff's proposed revised order brings into clear focus the crux of the present controversy. The Secretary objects primarily to a fine point of semantics —a fine point that for many in the plaintiff class could signify the difference between obtaining and being denied benefits.

On page 3 of this court's October 21, 1988, revised order the following statement appears:

"... objective evidence of pain's intensity or degree is not required *nor is its absence grounds for disregarding* the subjective evidence of pain. *Hyatt,* 807 F.2d at 379; *Foster,* 780 F.2d at 1129 n. 6" (Emphasis added.)

That is the statement defendant claims is an incorrect statement of the law.

The court disagrees.

The Secretary acknowledges in his memorandum filed on October 31, 1988, that controlling Fourth Circuit law prevents the Secretary from "[disregarding] subjective evidence of pain *entirely* because objective evidence of its intensity is lacking." The court fails to comprehend a manner in which the Secretary could *partially disregard* subjective evidence. The Secretary contends that this can be accomplished in the following manner. Rather than disregarding the claimant's subjective evidence of the intensity of his pain simply because there is no objective medical evidence of the pain's intensity, the Secretary adds one step to achieve the same result—

842

the Secretary disregards the claimant's subjective evidence *because it is not credible, due to the lack of objective medical evidence!*

Thus, the Secretary accomplishes indirectly what the Fourth Circuit has prohibited him from doing directly.

■ The lack of objective medical evidence of the degree or intensity of a claimant's pain is *not* a factor that can be considered in evaluating the *credibility* of the claimant's subjective evidence. The *only* case cited by the Secretary to support his contention that the lack of objective medical evidence of the degree or intensity of pain is one, nondeterminative factor to be considered in evaluating a claimant's credibility is *Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir.1984). In fact, in a split decision upholding the ALJ's finding that the claimant's testimony about his pain was not credible, the *Shively* court listed many different factors. All but one of these factors concerned the absence of corroborative facts (for example, the fact that claimant took only non-prescription pain medication [aspirin] for relief of his pain). The court also observed that the claimant's allegations of pain were not supported by x-rays or neurological findings. However, the opinion does not state what weight, if any, this factor was given in determining that the claimant was not credible. Moreover, in *Thorne v. Weinberger*, the Fourth Circuit Court of Appeals stated, "... [i]t appears that the subjective evidence of pain suffered by Ms. Thorne was entirely discounted because of weak objective findings.... This alone requires reversal." 530 F.2d 580, 583 (4th Cir.1976).

■ A lack of other kinds of corroborative evidence relating to a claimant's subjective complaints of pain (such as the use of strong prescription pain medicine) is one factor that may be properly considered in evaluating the credibility of a claimant's subjective complaints. However, in order for the standard set forth in *Hyatt, Myers* and *Foster v. Heckler*, 780 F.2d 1125 (4th Cir.1986) to retain any meaning in the face of the Secretary's interpretation, a lack of objective medical evidence of the degree or intensity of the pain (for example, manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue) *cannot* be grounds for finding a claimant not to be credible. Objective medical evidence of pain, its intensity or degree, is very rare. The fact that a claimant cannot produce such evidence is consequently *irrelevant* to a determination of credibility.

It is important that the Secretary's decisionmakers understand the appropriate role of credibility findings with respect to pain evaluation. This court is acutely aware that it is the province of the fact finders—in this case, the Secretary's decisionmakers—to evaluate thoroughly the credibility of each claimant. This court does not intend to intrude on the fact finders' responsibility to make all appropriate credibility determinations.

However, several recent opinions by North Carolina adjudicators, provided with plaintiffs' brief in support of this motion, indicate that claims have been denied improperly because adjudicators allowed the absence of objective evidence of pain's intensity to *compel* a conclusion that the subjective evidence of intensity was not credible. Therefore, the Secretary's decisionmakers must be provided with appropriate instructions clearly explaining the proper evaluation of a claimant's subjective evidence of pain in order to prevent further confusion and to ensure that the Secretary's policy of nonacquiescence does not defeat the holdings of this court and the Fourth Circuit.

The Secretary has filed numerous papers in response to the plaintiff's motion, to this court's recent orders and to plaintiff's proposed findings and instructions. Throughout these documents, the Secretary makes objections that are groundless or amount to sophistry, and cites cases that do not support the proposition for which they are cited. The most egregious example is the citation of a footnote in *Foster v. Heckler*, 780 F.2d 1125, n. 7 (4th Cir.1986), for the proposition that the Secretary's current national pain policy is fully in compliance with Fourth Circuit law.

The undersigned served on the panel that wrote the *Foster* decision. The footnote in question states that the Social Security Disability Benefits Reform Act (DIBRA) standard for evaluating pain is consistent with prior case law of the Fourth Circuit. It does *not* state that the Secretary's *interpretation and application* of that statutory standard is consistent with Fourth Circuit law.

■ The Disability Reform Act states: Objective, medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A) (Supp. IV 1986). That *statute* does not provide *any* directions concerning the evaluation of subjective evidence of the degree or intensity of pain, should objective medical evidence of the degree or intensity of the pain not be available.

*Fourth Circuit law* does provide such directions. Thus, the statute and the prior case law of the Fourth Circuit are consistent, but not coextensive. Therefore, footnote 7 of the *Foster* opinion does *not* mean that the Secretary's *interpretation* of the statute as to details not dictated by the language of the statute is consistent with the Fourth Circuit's rulings on those details.

Neither *Foster* nor DIBRA creates a rule or permits an inference that the absence of objective evidence of the degree or intensity of pain is grounds to ignore or discount the impact of pain on a claimant's ability to work. The *Myers* line of cases requires the full evaluation of the impact of pain, even when its intensity or severity is shown only by subjective evidence. *Myers*, 611 F.2d at 983. Notably, the district court in *Foster* had required objective proof that the claimant's physical condition could result in the degree of pain alleged. On appeal, the Fourth Circuit held that the district court had gone "beyond the pain standard" in requiring this type of objective evidence. *Foster*, 780 F.2d at 1129. In the words of

the *Foster* panel: "The ALJ's complete disregard of Foster's subjective testimony of pain because of purportedly weak objective medical findings is alone sufficient to require reversal." *Id.* at n. 6 (citing *Thorne v. Weinberger*, 530 F.2d 580, 583 (4th Cir. 1976)).

In short, the Secretary is not entitled to instruct his adjudicators that the Fourth Circuit has adopted the Secretary's national pain policy as he has been applying it. No Fourth Circuit decision so holds.

The instructions provided with this order are necessary to ensure that the Secretary's policy of nonacquiescence victimizes no more North Carolinians, and that the law of this circuit applies with full force and effect to each of their claims.

The Secretary has had ample opportunity to comply with Fourth Circuit law. He has not complied. The plan proposed by the Secretary in a document filed July 28, 1988, is inadequate to achieve compliance. Meanwhile, the affected class continues to suffer illegal denial of benefits and to grow in membership.

■ When, as in this case, the Secretary has failed to produce instructions that comply with controlling law, a district court has authority to formulate its own instructions and order the Secretary and his decisionmakers to follow them. *Schisler v. Bowen*, 851 F.2d 43, 44–45 (2d Cir.1988). *See also Hutto v. Finney*, 437 U.S. 678, 687, 98 S.Ct. 2565, 2572, 57 L.Ed.2d 522 (1977) ("[T]aking the long and unhappy history of the litigation into account, the court was justified in entering a comprehensive order to ensure against the risk of inadequate compliance.").

### ORDER

In light of the foregoing, IT IS ORDERED that:

1. The Secretary shall distribute immediately, to all administrative law judges and decisionmakers at all levels who handle or influence or advise with reference to social security cases arising in North Carolina, the exact text, in readable type, of the instructions attached hereto as Exhibit A.

The Secretary is instructed not to delete anything from these instructions nor paraphrase them nor to add to them any provisions that would limit, qualify or modify in any respect the import of these instructions.[3]

2. Pursuant to paragraphs B and C of this court's October 21, 1988, order, the Secretary is ORDERED to cancel and rescind, for North Carolina, all instructions and directives to agency adjudicators and doctors that are contrary to or inconsistent with the instructions required by this order. The instructions and directives to be rescinded are SSR 88–13 and Program Operations Manual System (POMS) sections DI 24501.025, DI 24510.030 and DI 24515.-060. The Secretary is ordered to advise all agency adjudicators and doctors deciding or making findings in North Carolina cases that those directives and instructions have been rescinded in North Carolina, and that all such adjudicators and doctors are to disregard the rescinded instructions and directives in evaluating or deciding disability claims in North Carolina. The Secretary is ordered to provide to all agency adjudicators and doctors deciding or making findings in North Carolina, by April 17, 1989, notice of the rescission of SSR 88–13 and POMS sections DI 24501.025, DI 24510.030 and DI 24515.060, in accordance with this paragraph.

3. Pursuant to Paragraphs D and F of this court's October 21, 1988, order, the Secretary is ordered to issue the instructions and directives called for herein no later than April 17, 1989.

4. If the Secretary fails to comply with any term of the court's order, the Secretary shall be held in contempt and penalties, appropriate in amount and nature to attract the Secretary's attention, will be levied.

5. Any memorandum, letter or other document, publication or film generated within five years from the date of this order by any component of the Secretary's agency, regarding or giving any instructions with respect to pain evaluation for cases in North Carolina, shall be provided to plaintiffs' counsel, sufficiently in advance of its date of expected use for plaintiffs' counsel to have an adequate opportunity to review and make comment on such material, before its use.

At the end of that five year period, both parties shall submit a report to the court concerning the necessity, or lack thereof, of continuing this provision for an additional period of time.

6. The Secretary shall send to plaintiffs' counsel, on a timely basis, all decisions rendered in all redeterminations held under the court's orders in this case. Should plaintiffs' counsel conclude that the Secretary has failed to comply with this order or is continuing to ignore Fourth Circuit law, a motion may be made to this court for the Secretary to show cause why he should not be held in contempt.

7. Pursuant to Paragraph E of the October 21, 1988, order, the Secretary shall afford a full, immediate reconsideration and rehearing to any disability claimant whose claim involved an allegation of pain and whose claim was denied *prior to the Secretary's distribution and actual use of the instructions attached to this order.* Persons entitled to new hearings pursuant to this order shall be treated in every respect like *Hyatt* class members. All provisions of the December 10, 1987, order entered by this court apply to the new class members.

IT IS SO ORDERED.

### EXHIBIT A

### SOCIAL SECURITY RULING FOR REVIEWS OF NORTH CAROLINA DISABILITY CLAIMS BASED ON PAIN AS A DISABLING CONDITION

This ruling establishes a new pain evaluation policy for use by all North Carolina

---

3. The text of these instructions is verbose, repetitive and convoluted, a style disfavored and typically avoided by this court. However, the format of the instructions is modeled on that of other Social Security rulings. The structure and language is retained as a convenience to ALJs who are presumably used to this format and can understand the style of language better than can this court.

adjudicators. This ruling is the result of and is issued pursuant to the order of the United States District Court in the case of *Hyatt v. Heckler.* This ruling rescinds for North Carolina the pain evaluation policy contained in Social Security Ruling ("SSR") 82–58, Program Operations Manual System ("POMS") § 2205, retained in POMS §§ DI 24501.025 and DI 24510.030, and continued through any other directives the Secretary has issued that include, refer to, or are based upon SSR 82–58, including POMS § DI 24510.060 and SSR 88–13. The pain evaluation policy contained in these directives is hereby abandoned in North Carolina.

PURPOSE: The purpose of this ruling is to state the new, federal court-ordered policy for North Carolina on the evaluation of pain as a disabling condition. The federal court has ordered this ruling to assure that the pain evaluation policy applied to North Carolina claimants will be consistent with Fourth Circuit law.

CITATIONS (AUTHORITY): Sections 223(d), 216(i) and 1614(a) of the Social Security Act, as amended; *Myers v. Califano,* 611 F.2d 980 (4th Cir.1980); *Hyatt v. Heckler,* 579 F.Supp. 985 (W.D.N.C.1984), *aff'd,* 807 F.2d 376 (4th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 79, 98 L.Ed. 2d 41 (1987); *Foster v. Heckler,* 780 F.2d 1125 (4th Cir.1986); *Thorne v. Weinberger,* 530 F.2d 580 (4th Cir.1976); *Mode v. Celebrezze,* 359 F.2d 135 (4th Cir.1966); *see also Green v. Schweiker,* 749 F.2d 1066, 1970 (3d Cir.1984). There are numerous regulations, statutes, etc., that relate in some manner to this ruling (*e.g.,* Regulation No. 4, sections 404–1508, 404–1528 and 404–1529; and Regulation No. 16, sections 416.-908, 416.928 and 416–929). Unless specifically rescinded, such regulations are still valid. However, *no* such regulation is to be interpreted or construed in any manner to undermine, limit, modify or otherwise interfere with the substance, purpose or intent of this ruling.

INTRODUCTION: The Secretary's pain evaluation policy, as embodied in SSR 82–58, POMS § 2205, and subsequent instructions based thereon, violates binding precedent of the United States Court of Appeals for the Fourth Circuit. All social security decisionmakers in North Carolina at every level of the Social Security Administration are within the jurisdiction of the Fourth Circuit. Therefore, to comply with decisions of the federal courts, *the Secretary must abandon, and does hereby abandon for North Carolina, the pain evaluation policy previously applied by his decisionmakers. Effective immediately, all social security decisionmakers in North Carolina must follow the policy and guidelines that appear in this ruling.*

POLICY: It is rare when the existence of pain or its intensity, severity, degree or functional effect can be measured objectively. The degree of pain caused by a particular stimulus varies enormously among individuals experiencing pain. Because pain, whether or not objectively measurable, can significantly impair an individual's ability to perform work-related activities, it is very important to evaluate properly subjective evidence of pain.

Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown *only* by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (*i.e.,* manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motory disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative. It is as important to obtain all available subjective evidence of pain as it is to obtain all available objective evidence of pain or other symptoms.

## Need to Establish a Medically Determinable Impairment

An individual alleging pain must have an underlying mental or physical impairment, shown by medically acceptable objective evidence, that can reasonably be expected to cause pain. The absence of objective medical evidence of the pain itself, its intensity or degree, is *not* grounds for concluding that the pain is either inconsistent with or not reasonably related to the underlying impairment. Once an underlying impairment capable of producing pain is shown, the adjudicator must evaluate and fully consider *all* available evidence of the pain's impact on the individual's ability to work, including subjective evidence.

When medically acceptable objective evidence does not substantiate any physical impairment capable of producing the type of pain alleged (and a favorable determination cannot be made on the basis of the total record), the possibility of a mental impairment as the basis for the pain should be investigated.

## Consideration of Pain in Establishing the Severity of a Medically Determinable Impairment

Once an underlying physical or mental impairment causing pain is shown by medically acceptable objective evidence, the effects of pain must be considered for each step of the sequential evaluation process.

### 1. Is the Condition Severe?

To be found disabled, an individual must have a medically determinable severe impairment(s). To be considered severe, the impairment or combination of impairments must have more than a minimal effect on the individual's physical or mental abilities to do basic work activities. In determining whether an impairment(s) is severe, full consideration is to be given to all material evidence, including signs, symptoms (such as pain) and laboratory findings. If present, objective findings alone may confirm that the individual has a severe impairment. If they do not, the impact of the individual's pain on the ability to work must be evaluated, even if the intensity or degree of pain is shown only by subjective evidence. If the pain has more than a minimal effect on the individual's physical or mental abilities to do basic work activities, the individual suffers from a severe impairment.

### 2. Are the Findings About the Individual's Impairment Identical to Those in the Listing?

Disability may be established on a medical basis alone if the criteria of an impairment cited in the Listing of Impairments are met. Some listed impairments include symptoms among the requisite criteria. For example, Listing 1.04 requires a history of joint pain and stiffness. When a symptom such as pain appears as a criterion (as in Listing 1.04), it is ordinarily essential only that the symptom be present in combination with the remaining criteria. Unless specifically indicated (as in Listing 1.04A, which requires that abduction of both arms at the shoulders, including scapula motion, be restricted to less than 90 degrees), quantification or evaluation of the intensity or of the functionally limiting effects of that symptom is not required to determine whether the documented findings meet the requisite criteria.

### 3. Are the Findings About the Individual's Impairment(s) Equivalent to Those for an Impairment(s) in the Listing?

In considering whether documented findings and symptoms are of severity equivalent to the requisite findings and symptoms of a listed impairment, you should look to see whether the set of symptoms, signs and findings present are of equal or greater significance than those in the listed criteria. However, an alleged or reported increase in the intensity of a symptom cannot be substituted, no matter how severe, for a missing or deficient sign or finding to elevate impairment severity to equivalency to the listed impairment. For example, a history of severe, persistent joint pain cannot be substituted for the required x-ray evidence of either joint space narrowing or boney destruction (with erosions or cysts)

in Listing 1.04 to draw a conclusion of "equal." If a claimant meets or equals a listed impairment—a determination made at the third step of the sequential evaluation—a finding of disability results, and there is no need to evaluate the impact of pain on the claimant's ability to perform work. *See* 20 C.F.R. § 404.1520(d).

No statement in this section shall be construed to interfere with the application of 42 U.S.C. § 423(d)(2)(A) and § 1382c(a)(3) regarding the disability claims of widow/ers and children. However, this ruling applies to *any* person claiming disability due to a physical or mental impairment(s).

### Consideration of the Intensity and Persistence of Pain in Determining Functional Capacity

If the listing is not met or equaled, a Residual Functional Capacity ("RFC") assessment is necessary to determine the effects of the claimant's underlying impairment, including the effects of pain on his or her capacity to perform former work or other work. The following Fourth Circuit principles control the evaluation by all North Carolina adjudicators of the impact of pain on the ability to perform work.

1. An individual alleging pain must have an underlying mental or physical impairment, proven by medically acceptable objective evidence. *Myers v. Califano,* 611 F.2d 980, 982–83 (4th Cir.1980); *Mode v. Celebrezze,* 359 F.2d 135, 136–37 (4th Cir.1966).

2. The underlying impairment must be reasonably expected to cause pain. The absence of objective medical evidence of the pain, its intensity or degree (*e.g.,* muscle atrophy, muscle spasm, sensory and motor disruption, etc.) is, however, *not* grounds for a finding that the degree or severity of pain alleged is either inconsistent with or not reasonably related to the underlying impairment, for subjective evidence alone *is sufficient* to prove the degree of pain experienced. *Myers,* 611 F.2d at 982–83; *Hyatt v. Heckler,* 579 F.Supp. 985, 1000 (W.D.N.C.1984), *aff'd,* 807 F.2d 376, 379 (4th Cir.

1986). No direct tie between objective medical findings and a specific level of pain is required. *Foster v. Heckler,* 780 F.2d 1125, 1128–29 (4th Cir.1986).

3. Once an underlying impairment capable of producing pain has been shown by medically acceptable objective evidence, the adjudicator must evaluate the disabling effects of the individual's pain, even though its intensity or severity is shown *only* by subjective evidence. *Myers,* 611 F.2d at 982–83; *Hyatt,* 579 F.Supp. at 1000. The absence of objective medical evidence of the degree, severity or intensity of the pain is not grounds for a conclusion that the subjective evidence lacks credibility; *disregard* of the claimant's subjective testimony of pain because of weak objective evidence is erroneous and prohibited by Fourth Circuit law. *Thorne v. Weinberger,* 530 F.2d 580, 583 (4th Cir.1976). Subjective evidence of the pain's intensity or degree may well indicate the existence of disability; when such evidence is presented, it must be considered seriously. *Id. Accord Foster,* 780 F.2d at 1128–29. Accordingly, North Carolina adjudicators must evaluate the credibility of subjective evidence of pain in a manner consistent with the principle from the *Myers* line of cases that once an underlying impairment capable of causing pain is shown, the pain itself can be disabling, even if its intensity is shown only by subjective evidence. *Myers,* 611 F.2d at 983. To conclude that the claimant's testimony or other subjective evidence concerning the pain's intensity or degree is not worthy of credence because of the absence of objective medical findings supporting such evidence contravenes Fourth Circuit precedent and is erroneous. *Id.*

4. Each Social Security decisionmaker has the responsibility to evaluate each witness appearing before him, including each claimant, to assess the witness's credibility. Nothing in this Social Security Ruling is designed to detract from or intrude upon appropriate credibility determinations by those charged with making such determinations. On the other

848

hand, the principles set forth above with respect to the evaluation of subjective evidence are not to be undermined, avoided, or limited under the guise of credibility findings based solely on the absence of objective medical evidence of the degree or intensity of pain.

Congress included a pain evaluation provision in the Disability Benefits Reform Act of 1984 ("DIBRA"). 42 U.S.C. § 423(d)(5)(a)[ (d)(5)(A) ]. This provision, by its terms, has expired, effective December 31, 1986. Some instructions from the Secretary have suggested, however, that the Secretary intends to abide by this provision even after its expiration. It is important that all social security decisionmakers in North Carolina recognize that the principles set out in this Social Security Ruling are *not* limited by any prior directives or instructions of the Secretary concerning DIBRA. Consistent with Fourth Circuit decisions in force before its enactment, DIBRA required medically acceptable objective evidence of a condition that could reasonably produce pain, *not* objective evidence of the pain itself or its degree. *Foster*, 780 F.2d at 1129.

Objective medical evidence of pain or of its intensity, severity, degree, or functional effect is rare. If such evidence exists, it should be obtained and considered. If objective medical evidence of the underlying impairment causing pain or of the pain itself alone warrants a finding of disability, subjective evidence of pain need not be acquired or evaluated. In all other cases in which subjective evidence of pain is presented, however, the following guidelines must be followed.

In determining the functional limitation caused by the claimant's pain, the adjudicator shall direct specific inquiries about the pain and its effects to the claimant, to his or her treating and examining physicians and to any other third parties who would be likely to have such knowledge. Such inquiries should investigate any available evidence relating to subjective complaints, including:

1. The nature, location, onset, duration, frequency, radiation and intensity of any pain;

2. Precipitating and aggravating factors (*e.g.*, movement, activity, environmental conditions);

3. Type, dosage, effectiveness and adverse side effects of any pain medication;

4. Treatment, other than medication, for relief of pain;

5. The claimant's functional restrictions imposed by pain;

6. The claimant's daily activities;

7. The claimant's work record.

Provided there is medically acceptable objective evidence of an underlying impairment that could reasonably be expected to cause pain, the evidence obtained as a result of these inquiries may alone provide the basis for a finding of disability.

*Importance of Considering Allegations of Pain in Assessing Residual Functional Capacity and Explaining Conclusions Reached*

All available evidence must be evaluated in determining the impact of the individual's pain on his or her ability to work. Adjudicators shall discuss and explain the weight accorded to each item of relevant, available evidence obtained. The Residual Functional Capacity assessment must describe the relationship between the medically determinable impairment and the conclusions of Residual Functional Capacity which have been derived from the available evidence. Any inconsistencies in the available evidence must be discussed and evaluated if deemed significant by the adjudicator.

At this stage of the evaluation of a claimant's pain, it is assumed that he or she has shown by medically acceptable evidence an underlying impairment *capable of causing* pain. Once such an underlying impairment is shown, the pain itself can be disabling, *even if its intensity is shown only by subjective evidence.*

EFFECTIVE DATE: The policy explained herein is a *new* policy effective on the date this ruling is issued.