**Lois M. GRANT, on behalf of herself and all other similarly situated persons**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Appellant.**

No. 91–5675.

United States Court of Appeals, Third Circuit.

Argued March 10, 1992.

Decided March 5, 1993.

Sur Petition for Rehearing April 7, 1993.

Robert M. Loeb (argued), Attys., Appellate Staff, Civ. Div., Dept. of Justice, Washington, DC, for appellant.

Peter Zurflieh, Lawrence E. Norton, II (argued), Central Pennsylvania Legal Services, Harrisburg, PA, Louise O. Knight, Clement and Knight, Lewisburg, PA, for appellees.

Pamela Walz, Thomas D. Sutton, Community Legal Services, Inc., Philadelphia, PA, for amicus curiae, Jane Doe.

Jonathan A. Weiss, Toby Golick, David S. Udell, New York City, for amici curiae, Claudia Kendrick and Legal Services for the Elderly.

Before: HUTCHINSON, ALITO, and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

This is an interlocutory appeal in a class action brought pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The question presented is whether the district court may hold a trial and make its own findings of fact regarding the alleged general bias of a Department of Health and Human Services (HHS) administrative law judge (ALJ) or whether the court must instead review the Secretary's findings on this question. Based on the express language of Section 205(g), binding circuit precedent, and the effect that such litigation would have on the independence of administrative law judges, we hold that the district court may not make its own findings but may only review the Secretary's findings and, if necessary, remand to the agency for further proceedings.

### I.

In September 1985, Lois Grant filed an application for Social Security Insurance disability benefits. She asserted that she could not perform any substantial gainful employment because of an injury to her knee, as well as pain, depression, and other conditions stemming from that injury. The state agency handling the application de-

Stuart M. Gerson, Asst. Atty. Gen., James J. West, U.S. Atty., William Kanter,

nied her claim. Grant then requested a hearing before an HHS Administrative Law Judge, and her case was assigned to ALJ Russell Rowell. After a hearing, ALJ Rowell concluded that Grant was not entitled to benefits. He found that the medical evidence did not show that Grant could not perform sedentary work, such as that in which she had previously engaged. App. 36, 39. Furthermore, he found that Grant's complaints of pain were not credible. App. 37. In reaching this conclusion, he relied on what he termed "a large element of secondary gain" and noted that following her injury Grant's after-tax benefits from workers' compensation exceeded her before-tax income prior to the injury. App. 37–38. Grant then sought review of the ALJ's decision before the HHS Appeals Council, but the Appeals Council denied her application for review.

In 1988, Grant filed a complaint in the United States District Court for the Middle District of Pennsylvania pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),[1] against the Secretary of Health and Human Services, asserting that the decision denying her benefits was contrary to the Social Security Act and the Due Process Clause of the Fifth Amendment. Her complaint specifically alleged (App. 44):

> ALJ Rowell is inclined in every disability case to deny benefits; he uses his discretion to determine credibility to effect this bias against claimants.

Several months later, Grant filed an amended complaint, which added two additional named plaintiffs, Jamie P. Donnelly and Harold Wallace.[2] In addition, the amended complaint was brought on behalf of a class consisting of certain disability claimants whose cases had been or would in the future be assigned to ALJ Rowell. Among other things, the complaint sought a declaratory judgment that ALJ Rowell was biased against disability claimants and

1. This provision states:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be' conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court may, on motion of the Secretary made for good cause before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.
42 U.S.C. § 405(g).

2. The amended complaint alleged that ALJ Rowell had denied the disability claims of both of these men and in doing so had found that they were not credible. App. 55–58.

that this bias had deprived or would deprive the plaintiffs of a fair hearing. The complaint also sought an injunction requiring that all of the plaintiffs' claims that ALJ Rowell had rejected be reheard before other ALJs, as well as prohibiting the Secretary "from assigning ALJ Rowell in the future to any tasks which involve the discretion to determine Social Security and/or SSI disability claims."[3] App. 62.

The Secretary opposed class certification and moved for a protective order preventing the plaintiffs from conducting further discovery.[4] The district court denied the Secretary's motions.[5] *Grant v. Sullivan,* 720 F.Supp. 462 (M.D.Pa.1989).

In February 1990, the district court certified a class consisting of "all claimants for Social Security disability benefits or Supplemental Security Income disability benefits, or both, who have received, or will receive, an adverse decision from Administrative Law Judge Russell Rowell on or after January 1, 1985, and all disability claimants whose claims have been or will be assigned to ALJ Rowell for a decision." *Grant v. Sullivan,* 131 F.R.D. 436, 450 (M.D.Pa.1990).[6]

In the meantime, the Chair of the Social Security Administration Appeals Council, Eileen Bradley, had determined that the agency should conduct its own investigation into the allegations that ALJ Rowell was generally biased against disability claimants. Ms. Bradley appointed a three-member panel and instructed it to examine the records in a random sample of the disability cases decided by ALJ Rowell. She stated that the sample was "anticipated to consist of at least 200 cases." App. 105. She also stated that the panel would seek to determine whether the records in these cases "manifest instances of a pattern of bias of any sort on the part of ALJ Rowell, based, inter alia, on the conduct of the hearings, the language of the decisions, credibility determinations, evidentiary inferences and the accuracy of characterization of medical exhibits." *Id.* In addition, she stated that the plaintiffs and ALJ Rowell would have the opportunity to appear, testify, introduce evidence, and call and examine witnesses. *Id.*

After the decision to conduct this administrative investigation was announced, the Secretary filed a motion in the district court asking the court to dismiss or, in the alternative, to stay the case in favor of the administrative investigation. The magistrate judge recommended that the stay be granted provided that the Secretary agreed to postpone the administrative proceeding until the plaintiffs could complete their discovery. The district court, however, rejected this recommendation, stating (App. 133) that it had already decided that the plaintiffs were entitled to a trial in district court on their claims of bias and that exhaustion of administrative remedies should not be required.[7]

---

3. In addition, the complaint sought that notice be sent to all class members informing them that ALJ Rowell was biased and that they were entitled to a new hearing. Finally, the complaint sought findings that the named plaintiffs were entitled to benefits.

4. The Secretary contended that the plaintiffs had waived their claims of bias by failing to raise them during the administrative proceedings, that the claim of ALJ Rowell's alleged "general" bias toward disability claimants was not justiciable, and that the district court lacked jurisdiction with respect to those members of the plaintiff class who had not exhausted administrative remedies or filed suit within 60 days of the final administrative order.

5. Among other things, the court held that the plaintiffs' bias claims were not barred due to failure to exhaust or failure to file suit within the 60-day period because the plaintiffs and their attorneys could not have reasonably detected ALJ Rowell's bias until later. *Grant v. Sullivan,* 720 F.Supp. at 471–74. In doing so, the court reserved decision on "whether [it] should try the bias claims ... or whether [it] should remand these claims to the Secretary for fact-finding" until the court decided the question of class certification. *Id.* at 474.

6. Donnelly withdrew as a class representative, and Wallace was dismissed by the court as a class representative. 131 F.R.D. at 448.

7. The court wrote (App. 133):

The Secretary's motion seeks a stay of proceedings in order to give the Secretary time to try a new ad hoc administrative procedure for determining whether Administrative Law Judge Russell Rowell is biased. In an order dated July 27, 1989, the Court decided the same question which the Secretary has now

Despite the district court's denial of the motion, the special panel proceeded with the investigation of ALJ Rowell and set out to examine the records in a statistically significant sampling of his cases. The panel did not attempt to analyze other evidence, such as depositions and statements of co-workers, regarding ALJ Rowell's personality or views.

The panel determined that ALJ Rowell had decided 948 disability cases during a five-year period. From these, the panel selected a random sample and was eventually able to examine the files in 212 cases. All pertinent documents in the files were reviewed, and tape recordings of the hearings were studied.

In October 1990, the panel issued its report. The panel reported that it had "detected no patterns of irregularity during the hearing process, and no indication in the hearing tapes or transcripts it reviewed that Judge Rowell entertains any bias against any of the claimants, and certainly not against all of them." App. 168. The report continued (*id.* at 169):

Indeed, as a general rule, the Panel has concluded that at the hearings Judge Rowell consistently comported himself in a professional, courtly, polite and gentle fashion, displaying neither hostility nor rancor towards any attorney or claimant.... In addition, our review of the "appeals files" (hearing office records) available to us shows that Judge Rowell is scrupulously conscientious in his preparation for, and conduct of, administrative hearings in Social Security claims.

In addition, the report found no statistical evidence that ALJ Rowell was biased against all disability claimants or that he

placed before the Court in the motion to dismiss or for a stay of proceedings—whether we may try the bias claims of the Plaintiffs and the class members or whether we are obliged to remand this action to the Secretary. *Grant vs. Sullivan,* 720 F.Supp. 462, 474 (M.D.Pa. 1989). In that decision we stated that whether we should try the bias claims or whether we should remand the claims to the Secretary for fact-finding depended in large part upon whether we certified a class of Plaintiffs in this action and what size of class we certified. *Id.*

was biased based on race, ethnicity, gender, or age. *Id.* at 172–73, 181–82.

The report, however, did criticize ALJ Rowell for employing what the panel termed "irregular language" in about 70 cases. *Id.* at 174. As examples, the report mentioned cases in which ALJ Rowell had described a claimant whose testimony he did not believe as "manipulative" or a "malingerer," as having put on a "performance" or "charade," or as having attempted to obtain "secondary gain" (i.e., obtain more in benefits than the claimant had previously earned by working). *Id.* at 174–75. While recognizing that ALJ Rowell was required to make credibility determinations, the panel found that his language in these cases exceeded "the bounds of taste and the needs of a legally sufficient, defensible disability determination." App. 178. The panel also found that ALJ Rowell had placed too much emphasis on the concept of "secondary gain."

The acting Chair of the Appeals Council, Andrew J. Young, generally accepted the panel's conclusions, including all of those noted above. In addition, Mr. Young wrote that although he did not "accept the proposition that an abstract psychological inquiry" regarding ALJ Rowell was appropriate, he had decided, for purposes of completeness, to consider deposition testimony from former co-workers of ALJ Rowell that had been obtained in civil discovery. App. 144. He stated:

I find no persuasive evidence in isolated statements from the deponents as to what they allegedly heard ALJ Rowell utter, or in their personal opinions of ALJ Rowell to support a finding that he has a mindset that is biased against claimants generally or certain claimants

The Court held a hearing on the Plaintiffs' motion for class certification on January 22–24, 1990. By order dated February 21, 1990, the Court certified a class of approximately 700 persons in this case and determined that the members of the class were not obliged to exhaust administrative remedies before proceeding in this Court on their class claims. The Court determined that proposed class members would suffer irreparable harm by first having to exhaust administrative remedies.

based on their race, ethnicity, or socio-economic status, to the exclusion of determining the merits of each case based upon the record evidence.

*Id.* at 144–45.

After the Appeals Council had made its findings, the Secretary moved the district court to vacate the orders setting the case on the trial calendar and holding that the plaintiffs need not exhaust their administrative remedies. The Secretary asked that the district court instead review the plaintiffs' claims on the administrative record. In the alternative, the Secretary asked that the district court stay or postpone the trial of the case pending the disposition of his motions and interlocutory appellate review of that disposition. The district court denied the Secretary's motion to vacate the orders, but certified an interlocutory appeal under 28 U.S.C. § 1292(b) to determine "whether [the district court] may conduct a trial on Plaintiffs' claims of general bias." App. 292.

On appeal, the Secretary argues that the district court may not properly conduct a trial and make findings of fact regarding ALJ Rowell's alleged general bias. Relying on Section 205(b)(1), (g), and (h) of the Social Security Act, 42 U.S.C. § 405(b)(1), (g), and (h), the Secretary argues that the fact-finding role in Social Security cases is exclusively his and that the district courts have no fact-finding role. The Secretary maintains that his argument is supported by our decision in *Hummel v. Heckler*, 736 F.2d 91 (3d Cir.1984), that the status of the present case as a class action does not provide a valid basis for distinguishing it from *Hummel*, and that a trial in district

court examining the mindset, thought processes, and predispositions of ALJ Rowell would be destructive to the integrity of the administrative process.

The plaintiffs contend that neither the language of the Social Security Act nor our decision in *Hummel* precludes the district court from conducting a trial and making findings on the issue of bias because the present case is a class action. The plaintiffs rely primarily on the Supreme Court's decision in two cases, *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), and *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). The plaintiffs also argue that an inquiry into ALJ Rowell's state of mind is justified in this case because there is substantial evidence of his bias. The plaintiffs highlight the following evidence: their deposition of a "decision-writer" who worked for ALJ Rowell for five years; planned trial testimony by a former attorney-advisor and decision-writer regarding his conversations with ALJ Rowell at lunch, during visits at each other's homes, and on other occasions; a statistical analysis of a sample of ALJ Rowell's decisions by their expert; and evidence that ALJ Rowell allegedly destroyed his notes concerning certain cases after they were sought by plaintiffs in discovery. Appellees' Br. at 10–18.

## II.

We begin by examining the pertinent provisions of the Social Security Act and governing circuit precedent concerning those provisions. Under Section 205(b)(1) of the Act, 42 U.S.C. 405(b)(1),[8] the Secre-

---

**8.** The full text of 42 U.S.C. § 405(b)(1) reads:

(b) Administrative determination of entitlement to benefits; findings of fact; hearings; investigations; evidentiary hearings in reconsideration of disability benefit terminations; subsequent applications

(1) The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Secretary which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable lan-

guage, setting forth a discussion of the evidence, and stating the Secretary's determination and the reason or reasons upon which it is based. Upon request by any such individual or upon request by a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, surviving divorced father, husband, divorced husband, widower, surviving divorced husband, child, or parent who makes a showing in writing that his or her rights may be prejudiced by any decision the Secretary has rendered, he shall give such applicant and such other individual reasonable notice and opportunity for a hearing

tary is directed to "make findings of fact, and decisions as to the rights of any individual applying for a payment." The Secretary's decisions are subject to judicial review under Section 205(g) of the Act, 42 U.S.C. § 405(g), but the scope of that review is circumscribed. Section 205(g) states without qualification or exception:

The findings of the Secretary as to any fact, if supported by substantial evidence shall be conclusive....

 If a district court rejects a finding pursuant to this standard, Section 205(g) authorizes the court to remand the case for rehearing before the agency. Furthermore, Section 205(g) provides that, if new material evidence becomes available after the conclusion of the administrative proceeding, a district court may order "additional evidence to be taken before the Secretary." And if any "additional or modified findings of fact" are made on remand, those findings are reviewable only to the same limited extent as the original findings. In short, Section 205(g) creates a scheme in which a district court may conduct a restricted review of the Secretary's findings and may remand a case for new findings, but this scheme makes no provision for a district court to make any findings of its own.

Addressing this scheme in *Hummel v. Heckler*, 736 F.2d at 93, we stated flatly that "the district courts have no fact-find-

ing role in Social Security cases." *See also Johnson v. Heckler*, 741 F.2d 948, 952 (7th Cir.1984); *Parker v. Harris*, 626 F.2d 225 (2d Cir.1980). *Hummel*, a case in which an individual claimant disputed the denial of benefits, is particularly relevant for present purposes since the claimant contended that the ALJ who decided her case was biased. She argued that the ALJ's bias stemmed from a "Bellmon Review" of his determinations. (The "Bellmon Review" program included a review by the Appeals Council of the allowance decisions of ALJs with high allowance rates.[9]) We held that the plaintiff was entitled to discovery to determine whether the ALJ had undergone a "Bellmon Review" and, if so, to obtain information about it. *Id.* at 94. We stated that this discovery was needed so that the plaintiff could "attempt to convince the district court that *a remand* to the Secretary *for the taking of new evidence* [was] appropriate." *Id.* at 95 (emphasis added). Furthermore, we stated that "[i]n the event that a finding of bias [was] made *on remand*," the plaintiff would be entitled to a new administrative hearing on the merits of her disability claim. *Id.* at 95 (emphasis added). Thus, we made perfectly clear in *Hummel* that the district court could not make findings regarding the ALJ's alleged bias but could at most remand the case to the Secretary so that the Secretary could make such findings. *Hummel* is of course binding on this panel.

---

with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at a hearing, affirm, modify, or reverse his findings of fact and such decision. Any such request with respect to such decision must be filed within sixty days after notice of such decision is received by the individual making such request. The Secretary is further authorized, on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of this subchapter. In the course of any hearing, investigation, or other proceeding, he may administer oaths and affirmations, examine witnesses, and receive evidence. Evidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure.

9. For a description of this program, *see Stieberger v. Heckler*, 615 F.Supp. 1315, 1377-79

(S.D.N.Y.1985), *vacated on other grounds*, 801 F.2d 29 (2d Cir.1986); *Association of Administrative Law Judges, Inc. v. Heckler*, 594 F.Supp. 1132, 1133-36 (D.D.C.1984). Our opinion in the present case should not be interpreted as expressing any view regarding the propriety of this or other similar programs. Courts and commentators have disagreed sharply on this question. *Compare Nash v. Bowen*, 869 F.2d 675, 678-81 (2d Cir.1989) (upholding program) and Pierce, *Political Control Versus Impermissible Bias in Agency Decisionmaking: Lessons from Chevron and Mistretta*, 57 U.Chi.L.Rev. 481, 501-19 (1990) (arguing that program was generally valid) *with Barry v. Bowen*, 825 F.2d 1324, 1330-31 (9th Cir.1987) (program invalid); *Salling v. Bowen*, 641 F.Supp. 1046, 1055-56, 1073 (W.D.Va.1986) (same); *Association of Administrative Law Judges*, 594 F.Supp. at 1141-43 (same).

■ The language of Section 205(g) and our decision in *Hummel* provide strong support for the Secretary's argument in this case that the district court may not conduct a trial and make its own findings regarding the ALJ's alleged bias. As we have noted, the Secretary has already conducted an extensive inquiry and has already made findings on this very matter. Thus, the portion of Section 205(g) stating categorically that "the findings of the Secretary as to any fact, if supported by substantial evidence" must be accepted as "conclusive" seems quite clearly to mean that the district court in this case must review the Secretary's findings on the question of bias rather than making independent findings of its own. Moreover, the entire scheme of judicial review set out in Section 205(b) appears to mean, as we put it in *Hummel*, 736 F.2d at 93, that "district courts have no fact-finding role in Social Security cases." *Hummel* was, to be sure, an individual review case, not a class action, but neither Section 205(g) nor *Hummel* draws any distinction between individual review cases and class actions.

### III.

In response to the language of the Social Security Act and our decision in *Hummel*, the plaintiffs, the district court, and the dissent all appear to acknowledge that a district court may not generally engage in fact-finding in a case brought under Section 205(g). They maintain, however, that this restriction does not apply in class actions.

In support of their position, the plaintiffs do not point to anything in the language of Section 205(g) or any other provision of the Social Security Act or its legislative history. Instead, they rely primarily on two Supreme Court decisions—*Califano v. Yamasaki, supra,* and *Bowen v. City of New York, supra.* In addition, they cite a number of lower court decisions. The dissent, taking a somewhat different approach, attempts to find support in the language of Section 205(g), but this argument appears to us to be foreclosed by *Yamasaki*. The dissent also relies on *City of New York,* as

well as *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 499, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), which concerned a provision of the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1160. We find all of these arguments unavailing. We will first discuss the three relevant Supreme Court decisions—*Yamasaki, City of New York,* and *McNary*—and then turn to the lower court cases.

A. In *Yamasaki,* a class action was filed by Social Security recipients who contended that the Social Security Administration was required to provide the opportunity for a hearing before beginning to recoup overpayments. In the Supreme Court, the Secretary of Health, Education, and Welfare argued, among other things, that class relief may not be awarded in a case brought under Section 205(g). The Secretary relied on "the language of § 205(g) which authorizes suit by '[a]ny individual,' speaks of judicial review of 'any final decision of the Secretary made after a hearing to which [the plaintiff] was a party,' and empowers district courts 'to enter ... a judgment affirming, modifying, or reversing the decision of the Secretary.'" 442 U.S. at 698, 99 S.Ct. at 2556. "This language," the Secretary contended, indicated that "Congress contemplated a case-by-case adjudication of claims under § 205(g)" rather than class actions. 442 U.S. at 698–99, 99 S.Ct. at 2556.

The Supreme Court disagreed. The Court first noted that Section 205(g) "contains no express limitation of class relief." 442 U.S. at 699, 99 S.Ct. at 2557. The Court next observed that the Federal Rules of Civil Procedure apply to all federal civil actions and that Rule 23 authorizes class actions if specified conditions are met. 442 U.S. at 700, 99 S.Ct. at 2557. The Court therefore reasoned that class relief is available in all federal civil actions "[i]n the absence of a direct expression" of a contrary congressional intent. *Id.* And the Court found no such "clear expression of congressional intent" in Section 205(g). *Id.* The Court attached little significance to the use of the term "[a]ny individual," since other jurisdictional provisions under which class actions may be brought employ simi-

lar language.[10] *Id.* Moreover, the Court concluded that "class relief is consistent with the need for case-by-case adjudication ... so long as the membership of the class is limited to those who meet the requirements of § 205(g)." 442 U.S. at 701, 99 S.Ct. at 2557. Finally, the Court observed that class relief was peculiarly appropriate in the case at hand because the claims turned on "questions of law applicable in the same manner" to all class members. *Id.*

Relying on this portion of the *Yamasaki* opinion, the plaintiffs advance two arguments, both of which seem to us quite strained. The plaintiffs first appear to argue that the Supreme Court's decision stands for the broad proposition that in class actions any restrictive language in Section 205(g) should not be interpreted literally. We strongly disagree with this interpretation. It is of course true, as recounted above, that the *Yamasaki* Court rejected a particular argument based on the language of Section 205(g). It hardly follows, however, as the plaintiffs seem to imply, that *every* argument based on the literal language of Section 205(g) must also be rejected. Instead, we believe that each such argument must be evaluated separately on its own merits. Furthermore, we believe that the Supreme Court's reason for rejecting the Secretary's argument in *Yamasaki* is inapplicable here. In *Yamasaki*, as noted, the Court found no clear expression of a congressional intent to bar all class actions under Section 205(g). Here, by contrast, Section 205(g) states explicitly and categorically that the Secretary's findings if supported by substantial evidence must be accepted as "conclusive," and Section 205(g) clearly sets out a scheme of judicial review for Social Security cases in which "the district courts have no fact-finding role." *Hummel*, 736 F.2d at 93.

The plaintiffs' second argument based on *Yamasaki* is essentially as follows. *Yamasaki* held that a class action

may be brought under the Section 205(g); fact-finding is necessary to adjudicate some class claims; therefore *Yamasaki* means that fact-finding by a district court in class actions is allowed. We believe that this argument reads far too much into *Yamasaki*. As we have noted, *Yamasaki* held that class relief is not barred in Section 205(g) cases, but *Yamasaki* did not exempt Section 205(g) class actions from the restrictions that this provision expressly imposes. Consequently, *Yamasaki* does not mean, as the plaintiffs suggest, that Section 205(g) restrictions of district court fact-finding may simply be disregarded whenever class relief is sought. Such an interpretation of *Yamasaki* would be especially far-fetched since the Court's opinion in that case made no mention of district court fact-finding. Indeed, as already noted, the Court observed that "class relief" was "peculiarly appropriate" in that case because the claims "turn[ed] on *questions of law* applicable in the same manner to each member of the class." 442 U.S. at 701, 99 S.Ct. at 2557 (emphasis added).

While the plaintiffs attempt to draw support for their position from *Yamasaki*, the dissent propounds an argument that *Yamasaki* precludes. In an attempt to find support in the language of Section 205(g) for its distinction between individual review cases and class actions, the dissent focuses on terms in Section 205(g) that the dissent suggests are more applicable to individual review cases than to class actions. See dissenting op. at 1347–48. The dissent includes the following quotation from Section 205(g) with the terms it finds helpful highlighted:

> Any *individual,* after any *final decision* of the Secretary made after *a hearing* to which he was *a party,* irrespective of *the amount in controversy,* may obtain a review of such *a decision* by a civil action commenced within sixty days after the mailing to him of such decision or within such further time as the Secretary may allow.... The findings of the Sec-

---

**10.** The Court cited 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 1361 (mandamus), and 29

U.S.C. § 1132(a) (ERISA).

retary as to any fact, if supported by substantial evidence, shall be conclusive, and where *a claim* has been denied by the Secretary or *a decision* rendered under subsection (b) of this section which is adverse to an individual who was a *party to the hearing* before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review regulations and the validity of such regulations. (emphasis added).

Dissenting op. at 1347–48 (emphasis added in the dissenting opinion.

Based on these highlighted terms, the dissent draws the conclusion that "section 205(g) deals solely with individual review cases." *Id.* at 1349. The dissent subsequently reiterates:

> Section 205(g) sets out the district court's jurisdiction and applicable standard of review in individual review cases.

*Id.* at 1350.

This argument is almost precisely the same as the argument that was advanced by the Secretary and rejected by the Supreme Court in *Yamasaki*. There, as previously noted, the Secretary argued that many of the same terms highlighted by the dissent indicated that "Congress contemplated a case-by-case adjudication of claims under § 205(g) that is incompatible with class relief." 442 U.S. at 699, 99 S.Ct. at 2556. The Court, however, disagreed and held that Section 205(g) applies to class actions as well as individual review cases. Thus, the dissent's argument that "section 205(g) deals solely with individual review cases" (dissenting op. at 1349) is directly contrary to the *Yamasaki's* reasoning and holding.

B. The other Supreme Court case on which the plaintiffs rely—*Bowen v. City of New York, supra*—is likewise inapposite. There, a plaintiff class alleged that their disability claims had been denied based on a secret and illegal policy adopted by the Social Security Administration. The district court conducted a seven-day trial and found that the Social Security Administration had indeed followed a secret and ille-

gal policy. In the court of appeals and the Supreme Court, the Secretary and the Commissioner of the Social Security Administration did not challenge either the district court's authority to make findings, the particular findings that it made, or its ruling that the policy followed by the Social Security Administration was improper. Instead, they raised other arguments not directly relevant here.

In relying on *City of New York*, the plaintiffs appear to reason as follows. *City of New York* was a Social Security class action; factual findings were made; the Supreme Court did not criticize the district court for making those findings; therefore, factual findings in a Social Security class action must be proper. We do not agree.

■ First and most important, since the district court's authority to make findings was not challenged or addressed in the district court, the court of appeals, or the Supreme Court, the mere fact that findings were made is inconsequential for precedential purposes. "[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925). *Accord Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979); *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *Losada v. Golden Gate Disposal Co.*, 950 F.2d 1395, 1399 (9th Cir.1991); *National Cable Television Ass'n, Inc. v. American Cinema Editors, Inc.*, 937 F.2d 1572, 1581 (Fed.Cir.1991); *R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430, 433 (7th Cir.1991); *Cousins v. Secretary of the U.S. Dep't of Transportation*, 880 F.2d 603, 608 (1st Cir.1989); *Soyka v. Alldredge*, 481 F.2d 303, 306 (3d Cir.1973). *See also Hagans v. Lavine*, 415 U.S. 528, 535 n. 5, 94 S.Ct. 1372, 1378 n. 5, 39 L.Ed.2d 577 (1974) (*sub silentio* rulings on jurisdictional issues are not binding).

■ Second, even if we assumed that it was proper for the district court to engage in fact-finding in *City of New York,* mandamus jurisdiction, 28 U.S.C. § 1361, rather than Section 205(g), might have provided the basis for doing so. In *City of New York,* the district court and the court of appeals held that the district court had mandamus jurisdiction, as well as jurisdiction under Section 205(g). *City of New York v. Heckler,* 578 F.Supp. 1109, 1117–19 (E.D.N.Y.) *aff'd,* 742 F.2d 729, 734–39 (2d Cir.1984).[11] Mandamus is available only if, among other things, the plaintiff has no other adequate avenue of relief (*Heckler v. Ringer,* 466 U.S. 602, 616–17, 104 S.Ct. 2013, 2022–23, 80 L.Ed.2d 622·(1984)), and in *City of New York* the court of appeals held that this requirement had been satisfied. 742 F.2d at 739. In the present case, on the other hand, the plaintiffs have not asserted mandamus jurisdiction, and in any event they have an adequate alternative remedy, since they can seek review of the Secretary's findings on the issue of ALJ Rowell's alleged bias.

Moreover, we perceive a significant distinction between the factual questions at issue in cases like the *City of New York* and the factual question in the present case, a distinction that may have a bearing on the appropriateness of mandamus. In cases like *City of New York* in which plaintiffs claim that an agency has been following a secret and unlawful policy, it could be argued that normal administrative procedures are inadequate because the agency could not function as an impartial factfinder. In that situation, the ancient maxim that no one may be a judge in his own case could be invoked.[12] By contrast, when the factual question is simply whether a single ALJ is biased, any argument that

the agency could not act as an impartial fact-finder would have far less force. For all of these reasons, therefore, *City of New York* does not support the plaintiffs' argument in this case.

C. We similarly do not believe that *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 499, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), on which the dissent relies (dissenting op. at 1349–51), sheds light on the question before us. In *McNary,* the Supreme Court held that a district court had general federal question jurisdiction to entertain a class action brought by aliens who claimed that the INS was administering the Special Agricultural Workers (SAW) amnesty program in a way that violated due process and the Immigration Reform and Control Act of 1986. The Court held that 8 U.S.C. § 1160(e)—a provision of the Act that provides the exclusive avenue for judicial review of "an application for adjustment of status" pursuant to the SAW program—did not preclude the district court from exercising its general federal question jurisdiction. The Court relied on the particular language of 8 U.S.C. § 1160(e) (111 S.Ct. at 896–97) and observed that, if the plaintiffs' district court suit were barred, they "would not as a practical matter be able to obtain meaningful judicial review" of their claims (*id.* at 898).

*McNary* does not support the dissent's argument for the simple reason that *McNary* concerned a different question under a different statute—namely, whether 8 U.S.C. § 1160(e) precluded a district court from exercising general federal question jurisdiction. Here, neither 8 U.S.C. § 1160(e) nor any other immigration statute is implicated,[13] and general federal question jurisdiction has never been invoked.[14] Moreover, while the Court in

---

11. The Supreme Court did not reach this issue. The Court has never decided whether mandamus jurisdiction is available in Social Security cases. See *Heckler v. Ringer,* 466 U.S. 602, 616–17, 104 S.Ct. 2013, 2022–23, 80 L.Ed.2d 622 (1984). *Compare Colonial Penn Ins. Co. v. Heckler,* 721 F.2d 431, 437 n. 2 (3d Cir.1983).

12. The propriety of district court fact-finding in a case such as *City of New York* is not before us, and we express no view on this question. We merely note that, assuming for the sake of argu-

ment that the fact-finding in *City of New York* was proper, it would not follow that the district court could engage in independent fact-finding here.

13. Indeed, *McNary* distinguished *Heckler v. Ringer, supra,* which involved Section 205(g).

14. See *Heckler v. Ringer,* 466 U.S. at 613–16, 104 S.Ct. at 2020–22; (addressing general federal question jurisdiction to entertain claims relating

*McNary* observed that the plaintiffs could not have obtained meaningful judicial review if their district court action was barred, in this case the plaintiffs can obtain judicial review of the Secretary's decision regarding ALJ Rowell's alleged bias, but that review must be based on the administrative record and the Secretary's findings of fact.

D. In addition to relying on the Supreme Court decisions already discussed, the plaintiffs' brief cited—but did not discuss—several of our previous decisions. Appellee's Br. at 29 n. 8. Perhaps the only thing that needs to be said about these cases is that the fact-finding authority of the district court was not challenged or discussed in any of them. For this reason alone, they provide no precedential support for the plaintiffs' position. In any event, we find all of these cases readily distinguishable from the case before us.

In *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir.1989), a class action was filed contending that the Secretary was following another "alleged secret policy" (*id.* at 58), this one related to his "severity regulations." The district court denied class certification on grounds that we found erroneous, and we reversed and instructed the district court to reconsider its decision. *Id.* at 58–59. We also stated that, if the district court found that the case should proceed as a class action, it should entertain evidence of "systematic misapplication." *Id.* at 59. Thus, *Bailey*, like *City of New York*, was a case in which the propriety of district court

fact-finding was not challenged or addressed, and the disputed factual question—the existence of a secret, illegal policy—was one on which the Secretary's ability to make impartial findings could have been challenged.

In *Wilkerson v. Bowen*, 828 F.2d 117 (3d Cir.1987), we remanded a case to the district court and instructed the court to determine whether the plaintiffs were entitled to injunctive relief on their claim that the Secretary was not following our decisions regarding the evaluation of disability claims based on alcoholism. Any fact-finding that might be necessary in that case would again appear to fall into the same category as that in *City of New York* and *Bailey*, i.e., fact-finding to determine whether the Secretary was in practice departing from binding legal rules.

In *Holman v. Califano*, 835 F.2d 1056 (3d Cir.1987), we remanded a case for the district court to determine whether the Secretary had violated a duty to make disability payments to claimants within a reasonable time after they were found eligible. The opinion makes no reference to fact-finding. Nor does it suggest that the underlying facts (i.e., statistics on the length of time between a determination of eligibility and the commencement of payments) were either unknown or disputed. Thus, it may well be that the determination to be made by the district court on remand was purely legal, *viz.*, whether any delay shown by the statistics was reasonable.[15]

---

to Social Security); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (same).

**15.** We will not describe in detail the decisions of other courts of appeals and district courts on which the plaintiffs rely. The decisions that are most favorable to the plaintiffs—*Small v. Sullivan,* 820 F.Supp. 1098 (S.D.Ill.1992), and *Kendrick v. Sullivan,* 784 F.Supp. 94 (S.D.N.Y. 1992)—reject many objections raised by the Secretary to class actions similar to the one before us, but the opinions do not directly address the argument that the district court was barred by Section 205(g) from making its own findings of fact regarding the ALJs' bias. Virtually all of the other cases involve district court determinations regarding a practice or policy of the Social Security Administration or component of the Social Security system. *Luna v. Bowen,* 834

F.2d 161 (10th Cir.1987) (policy and practice regarding evaluation of pain); *Hyatt v. Heckler,* 711 F.Supp. 837 (W.D.N.C.1989), *aff'd in part sub nom. Hyatt v. Sullivan,* 899 F.2d 329 (4th Cir.1990) (same); *Samuels v. Heckler,* 668 F.Supp. 656 (W.D.Tenn.1986) (practice regarding instructions to consulting physicians); *New York v. Bowen,* 655 F.Supp. 136 (S.D.N.Y.1987), *aff'd. sub nom. New York v. Sullivan,* 906 F.2d 910 (2d Cir.1990). Thus, if these cases involved any fact-finding (as opposed to the interpretation of regulations and Social Security directives), the fact-finding would appear to be analogous to that in *Bowen* and *Bailey* and is not, for the reasons already discussed, germane for present purposes. In the final cited case, *Barnett v. Bowen,* 665 F.Supp. 1096 (D.Vt.1987), in which the district court awarded declaratory and injunctive relief related to delays in sched-

Finally, in several of our cases, while we remanded the case to the district court, our opinion provides no indication that we envisioned that the district would engage in any fact-finding on remand. *Mattern v. Mathews,* 582 F.2d 248 (3d Cir.1978), *cert. denied sub nom. Califano v. Mattern,* 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979); *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333 (3d Cir.1977).

In sum, we find nothing in any decisions of the Supreme Court or this court that supports the authority of the district court, in the face of section 205(g)'s express prohibition, to make its own findings regarding ALJ Rowell's alleged bias. We are therefore convinced that the district court lacked such authority.

### IV.

■ Section 205(g)'s restriction of district court fact-finding is not an empty technical requirement but instead serves a vital role in safeguarding the integrity of the administrative process. In the present context, Section 205(g) protects against discovery and court proceedings that could seriously undermine the independence of Social Security ALJs.

As the Supreme Court observed in *Butz v. Economou,* 438 U.S. 478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978), there was considerable concern prior to the passage of the Administrative Procedure Act that "persons hearing administrative cases at the trial level could not exercise independent judgment." Therefore, "the process of agency adjudication is currently structured so as to assure that the [ALJ] exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." *Id.* Relying in part on this structure, the Supreme Court concluded that the role of the modern federal ALJ is

"'functionally comparable' to that of a judge."[16] *Id.*

Availability of the type of discovery and trial that the plaintiffs sought in this case would undermine this vital independence. Although *Hummel* permits some discovery on the issue of bias, that discovery must be limited to the development of those facts and issues that are appropriate, on remand, to the Secretary's consideration of the existence of bias in connection with those benefit claims that are the subject of the section 205(g) action or actions before the district court. On that premise, we would be reluctant to sanction the type of discovery the district court contemplated in this case because we are convinced that such fact-finding would have a deleterious effect on the independence of ALJs and thus on the administrative process.

■ It has long been recognized that attempts to probe the thought and decision making processes of judges and administrators are generally improper. In *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004–05, 85 L.Ed. 1429 (1941), the Supreme Court observed that questioning a judge or administrator about the process by which a decision had been reached would undermine the judicial or administrative process. The Court wrote (*id.*): "Just as a judge cannot be subjected to such a scrutiny ..., so the integrity of the administrative process must be equally respected." *See also Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *Franklin Savings Ass'n v. Ryan,* 922 F.2d 209, 211 (4th Cir.1991); *NLRB v. Botany Worsted Mills,* 106 F.2d 263 (3d Cir.1939) (striking interrogatories probing the decision making process of NLRB members); 3 K Davis, *Administrative Law Treatise,* § 17.7 (1980).

In this case, the plaintiffs, through discovery,[17] have already delved deeply into

---

uling hearings, we see no indication that the court engaged in fact-finding.

**16.** See also *NLRB v. Permanent Label Corp.,* 657 F.2d 512, 527–28 (3d Cir.1981) (Aldisert, J., concurring) (discussing independence of ALJs),

*cert. denied,* 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982).

**17.** Our decision in *Hummel* did not approve discovery of the type permitted here. In *Hummel,* we held that a claimant was entitled to discovery as to whether the ALJ had undergone

ALJ Rowell's decision making processes, work habits, and private communications. For example, they deposed an opinion-writer who assisted ALJ Rowell in writing opinions for five years, and they plainly intended to rely heavily on her evidence. During her deposition, under questioning by plaintiffs' counsel, she gave evidence concerning, among other things, ALJ Rowell's instructions concerning opinions that she was assigned to draft, his use of "stock" language in opinions, differences between his work procedures and views and those of other ALJs, the length of his opinions and the number of revisions he made, her evaluation of aspects of his work, his consultation of law books, his familiarity with and views about particular rules of law, whether she thought his opinions were principled or result-oriented, how often she disagreed with his decisions, whether she believed that his decisions discriminated against certain groups, how he viewed his role as a Social Security ALJ, whether he ever uttered racial or ethnic epithets, complaints about him from typists and secretaries, how he evaluated certain types of evidence, the number of hours he worked, his views regarding particular physicians in the area, his views regarding alcoholism and obesity, and many other matters.

The plaintiffs also apparently intended to rely heavily on anticipated testimony by another co-worker who "wrote decisions for ALJ Rowell, [ ] discussed cases [with him] in the office, went to lunch with him nearly every day," became a "close personal" friend,[18] and visited ALJ Rowell's home. This testimony, according to the plaintiffs' proposed findings of fact, would relate numerous statements allegedly made by ALJ Rowell regarding his "views of claimants generally and the Social Security disability system and attorneys and doctors of claimants in the system." Appellees' Br. at 14. In addition, the plaintiffs sought in discovery ALJ Rowell's notes concerning cases that he decided, and the plaintiffs

allege that ALJ Rowell destroyed some of these documents in order to avoid producing them. In short, it appears that the plaintiffs made very extensive efforts to probe the thinking and decision making processes of an officer occupying a position described by the Supreme Court as "functionally comparable" to that of a judge.

Such efforts to probe the mind of an ALJ, if allowed, would pose a substantial threat to the administrative process. Every ALJ would work under the threat of being subjected to such treatment if his or her pattern of decisions displeased any administrative litigant or group with the resources to put together a suit charging bias.[19] Every ALJ would know that his or her staff members could be deposed and questioned in detail about the ALJ's decision making and thought processes, that co-workers could be subpoenaed and questioned about social conversations, that the ALJ's notes and papers could be ordered produced in discovery, and that any evidence gathered by these means could be used, in essence, to put the ALJ on trial in district court to determine if he or she should be barred from performing the core functions of his or her office. This would seriously interfere with the ability of many ALJs to decide the cases that come before them based solely on the evidence and the law.

### V.

■ We fully recognize that bias on the part of ALJs may undermine the fairness of the administrative process. "Trial before 'an unbiased judge' is essential to due process." *Johnson v. Mississippi*, 403 U.S. 212, 216, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423 (1971). "[A]ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301 (1968). *See also Haines v.*

a "Bellmon Review" and, if so, the nature of the review. 736 F.2d at 95. We did not sanction depositions of the ALJ's co-workers and staff.

**18.** Appellees' Br. at 13.

**19.** The parties have called to our attention the fact that similar class actions have recently been filed against several other HHS ALJs.

*Liggett Group Inc.,* 975 F.2d 81, 98 (3d Cir.1992); *Hummel,* 736 F.2d at 93.

The type of district court trial and fact-finding that the plaintiffs sought in this case, however, are not necessary in order to safeguard the impartiality of Social Security disability adjudications. Other procedures that pose far less threat to the integrity of the administrative process are readily available.

As previously noted, the Social Security Administration has promulgated regulations prohibiting an administrative law judge from conducting a disability hearing "if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. §§ 404.940, 416.1440. The regulations allow a claimant to seek the disqualification of an ALJ. *Id.* If the ALJ refuses to step aside, the claimant can pursue an administrative appeal (*id.*) and subsequently obtain judicial review. This procedure is analogous to the procedure for seeking disqualification of a federal district court judge. *See* 28 U.S.C. §§ 144, 455.[20]

Furthermore, in the present case the Social Security Administration responded to the allegations against ALJ Rowell by convening a special panel and conducting an extensive analysis of a statistically significant, random sample of his disability decisions. The special panel wrote a lengthy report setting out its findings, and while it did not find any evidence of bias, the panel criticized certain practices that it detected. The acting Chair of the Appeals Council then reviewed this report and accepted its essential conclusions. The Secretary acknowledges that the plaintiffs may seek judicial review of these findings and that the district court, if it finds them insufficient, may remand the matter to the Secretary for further proceedings. We, of course, express no view regarding the correctness of the administrative findings or the adequacy of the special panel's inquiry, but we are convinced that the plaintiffs' right to an impartial administrative deter-

mination can be fully protected through the process of judicial review of the Secretary's determination.

## VI.

In conclusion, we hold that the district court in the present case lacks the authority to conduct a trial and make independent findings of fact concerning the alleged bias of ALJ Rowell. We hold, instead, that the district court may only review the findings of the Secretary on this question pursuant to the standard set out in Section 205(g).

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting.

Suppose a class of plaintiffs alleged that the Secretary of Health and Human Services had adopted a secret policy under which claimants living in hispanic, black or poor white communities were presumed to be generally "less deserving" of social security disability benefits. Would a federal district have the authority to conduct a de novo fact-finding trial in ruling on plaintiffs' claim, or would the district court only have the authority to review the Secretary's findings of facts under a limited standard of review?

According to *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) and *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 499, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), the district court would have the power to conduct a de novo fact-finding trial. Why? Because, collateral classwide constitutional or statutory challenges to an agency's practices or policies are reviewed de novo by the courts. *Haitian Refugee Center,* 111 S.Ct. at 897; *Bowen v. City of New York,* 476 U.S. at 483, 106 S.Ct. at 2031–32.

Now substitute the entirely fictional hypothetical scenario described above for the actual complaint brought by the present class of plaintiffs. According to the complaint, ALJ Rowell has allegedly adopted a biased policy under which he

---

**20.** In addition, an agency may seek recusal of an ALJ in a proceeding before the Merit Sys- tems Protection Board. 5 U.S.C. § 7521.

believes that claimants living in hispanic, black or poor white communities are only "attempting to milk the system", that they are "perfectly capable of going out and earning a living", that they "prefered living on public monies," "that he had no intention of paying them" and that "he did not care what the evidence showed." Should a federal district court have the authority to conduct a de novo fact-finding trial in reviewing plaintiffs' claim, or should the district court only have the power to review the agency's findings under a limited standard of review?

The majority today answers that the district court does not have the authority to conduct a de novo trial, but instead only has the authority to review the agency's findings under a limited standard of review. I respectfully dissent. Why? Because, plaintiffs' claim of general bias is a collateral challenge to an unconstitutional practice, no less so because adopted by an ALJ than had it been adopted by the Secretary. As such the district court has the authority to conduct a de novo trial in reviewing plaintiffs' claim.

This dissent proceeds in two parts. In the first part I will refute each ground advanced by the majority for its holding. In the second part, I will submit an alternative reasoning to that of the majority.

## I.

The majority relies on four grounds for holding that the district court lacks the authority to make independent findings of fact in a classwide suit alleging unconstitutional and statutorily unlawful bias on the part of an ALJ.

First, the majority finds that the express language of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), "creates a scheme in which a district court may conduct a restricted review of the Secretary's findings and may remand a case for new findings, but this scheme makes no provision for a district court to make any findings of its own." Majority Op at 1338. Second, the majority reasons that our decision in *Hummel* "stated flatly that 'the district courts have no fact-finding role in

Social Security cases.'" Majority Op at 1338. Third, the majority finds that no decision from the Supreme Court or this court, including *Bowen v. City of New York*, has ever expressly held that the district court has the authority to make findings of fact regarding the alleged bias of an ALJ. Instead, according to the majority, in the only instances in which the district court engaged in fact-finding, the fact in question concerned the existence of a hidden unlawful agency or practice—a question on which the Secretary could not function as an impartial fact-finder. Majority Op at 1342. Fourth, the majority argues that this court should be reluctant to allow the district court to make independent findings of fact regarding the bias of an ALJ because "such fact-finding would have a deleterious effect on the independence of ALJs and thus on the administrative process." Majority Op at 1344. None of these grounds are valid.

## A.

As the district court correctly recognized, social security cases brought in federal district court generally fall into two categories. *Bowen v. City of New York*, 476 U.S. at 484, 106 S.Ct. at 2032. The first category is the individual review case. This involves an appeal to the district court from a final decision of the Secretary denying Social Security or SSI benefits. In this sort of appeal, the district court is asked to examine whether on the facts of the case the claimant is entitled to benefits. *Id.* The second category of social security cases is a collateral class action. This involves an action in the district court challenging the agency's policies or practices as unconstitutional or statutorily unlawful. In this sort of action, the district court is not asked to determine whether any of the class plaintiffs are actually entitled to benefits. *Id.*

Section 205(g) sets out the district court's jurisdiction and applicable standard of review in individual review cases. It provides in relevant part:

Any *individual*, after any *final decision* of the Secretary made after *a hearing* to

which he was *a party*, irrespective of *the amount in controversy*, may obtain a review of such *a decision* by a civil action commenced within sixty days after the mailing to him of such decision or within such further time as the Secretary may allow.... The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where *a claim* has been denied by the Secretary or *a decision* rendered under subsection (b) of this section which is adverse to an individual who was a *party to the. hearing* before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any *regulation prescribed under* subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. (emphasis added).

All that section 205(g) plainly says is that a claimant who has been denied benefits after a "hearing" to which the claimant was a "party" may petition the district court for review of the Secretary's decision, irrespective of the "amount in controversy," and that, in ruling on the denial of benefits, the court shall consider "conclusive" findings of the Secretary as to any fact, if supported by "substantial evidence." Stated another way, section 205(g) provides that in individual review cases district courts have jurisdiction to review denial of benefits by the Secretary, and in such cases the district court's fact-finding role is limited to affirming the findings of the Secretary if supported by substantial evidence.

Section 205(g), however, leaves unanswered two questions: first, does the federal district court have jurisdiction over collateral class actions where plaintiffs challenge a practice or policy of the agency as unconstitutional or statutorily unlawful, without challenging the underlying merits of the denial of their claims for benefits? Second, if the federal district court has jurisdiction over collateral class actions, what is the proper standard of review to be exercised by the court in such actions?

In *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), the Supreme Court answered the first question in the affirmative. The court found that section 205(g) does not preclude federal district courts from assuming jurisdiction over social security class actions. *Yamasaki*, 442 U.S. at 700–701, 99 S.Ct. at 2557. Instead, the court held that the plain language of section 205(g) is consistent with the exercise by district courts of their usual authority under the Federal Rules of Civil Procedure to conduct cases, including Social Security cases, as class actions:

Section 205(g) contains no express limitation of class relief. It prescribes that judicial review shall be by the usual type of 'civil action' brought routinely in district court in connection with the array of civil litigation.... In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court, including those seeking to overturn determinations of the departments of the Executive Branch of the Government in cases where judicial review of such determinations is authorized. (citations omitted).

*Id.*

Just as section 205(g) does not expressly address the question of whether federal district courts have jurisdiction over collateral class actions, it leaves untouched the question of the standard of review applicable in such actions. The majority claims, however, that, even in collateral class actions, the plain language of the statute "creates a scheme in which a district court may conduct a restricted review of the Secretary's findings and may remand a case for new findings, but this scheme makes no provision for a district court to make any findings of its own." Majority op at 1338. In so concluding, the majority homes in on a single phrase in section 205(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ...". According to the majority, that phase "seems quite clearly to mean that the district court

must review the Secretary's findings [even in collateral class actions] rather than setting out to make independent findings of its own." Majority Op at 1338–39.

Respectfully, the majority is wrong. The phrase does not "quite clearly" mean that the district court is bound by the Secretary's findings in collateral class actions for the quite simple reason that section 205(g) deals solely with individual review cases. While the majority does a good job of focussing on the phrase that the Secretary's findings are conclusive if supported by substantial evidence, it inexplicably ignores the other provisions of section 205(g) which surrounds that phrase and give it context and meaning.

For example, section 205(g) states that "any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision. . . ." The use of the terms "hearing to which he was a party" clearly contemplates an individual determination of eligibility for benefits at an actual proceeding where an individual claimant was present and was given the opportunity to present evidence. Moreover the use of the term "amount in controversy" also contemplate a determination of eligibility for benefits where the claimant and the Secretary seek to ascertain a dollar amount in benefits to which the claimant is entitled. These characteristics of the terms "hearing at which he was a party" and "amount in controversy" are only present in individual review cases where the claimant challenges the merits of the denial of benefits by the Secretary. By contrast, in most collateral review cases, plaintiffs may challenge a particular aspect of the Secretary's practice or policy without any reference to a hearing where plaintiffs were present. Moreover, since in a collateral action case, plaintiffs do not challenge the merits of the denial of their benefits, by definition there is no "amount in controversy."

The majority maintains that this reasoning is "foreclosed by *Yamasaki*." Majority op at 1339. According to the majority,

the Supreme Court in *Yamasaki*, held that "Section 205(g) applies to class actions as well as to individual review cases," and that the above reasoning "is directly contrary to the *Yamasaki* reasoning and holding." Majority at 1341. However, a careful reading of *Yamasaki* reveals that it is not contrary to the above reasoning. In *Yamasaki*, the Supreme Court stated that "Section 205(g) contains no express limitation on class relief." *Yamasaki*, 442 U.S. at 699, 99 S.Ct. at 2557. The court explained that Section 205(g) is simply silent on the question of whether federal courts may exercise jurisdiction over social security class actions. *Id.* at 700, 99 S.Ct. at 2557. According to the court, in the absence of clear expression by Congress of its intent to exempt social security class actions from the usual course of trying all suits of a civil nature, class actions were not precluded by Section 205(g). *Id.* All that the Supreme Court held in *Yamasaki* is that Section 205(g) did not limit federal court jurisdiction over social security class actions, just as here Section 205(g) does not limit the standard of review exercised by federal courts over those actions.

Recently, the Supreme Court engaged in the exact same analysis of a similar statute. In *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), a class of plaintiffs made up of unlawful alien farmworkers sued the Immigration and Naturalization Service (INS) under the Immigration Reform Control Act of 1986 (the Act). Plaintiffs claimed that the INS had denied their application for lawful status in violation of the due process guarantees of the Fifth Amendment to the Constitution. The Act itself prescribed the jurisdiction and standard of review by the courts in reviewing the denial by the INS of applications for lawful status. It provided in relevant part:

> There shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection.

8 U.S.C. § 1160(e)(1).

> There shall be judicial review of such a denial only in the judicial review of an

order of exclusion or deportation under section 1105a of this title.

8 U.S.C. § 1160(e)(3).

Such judicial review shall be based solely upon the administrative record established by the appellate authority and the findings of fact and determinations contained in such record shall be conclusive unless the applicant can establish abuse of discretion or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole.

8 U.S.C. § 1160(e)(3)(B).

Much as the majority maintains in the present case, the INS argued before the Supreme Court that the "plain language" of the Act restricted judicial review of, not only individual appeals of denial of status adjustment by the INS, but also collateral classwide constitutional and statutory challenges to INS policies and practices. The Court rejected the argument. The Court reasoned:

> the critical words [§ 1160(e)(1)] describe the provision as referring only to review "of a *determination* respecting an *application*" for SAW status. Significantly, the reference to "a determination" describes a single act rather than a group of decisions or a practice or procedure employed in making decisions. Moreover, when [§ 1160(e)(3) further clarifies that the only judicial review permitted is in the context of deportation proceeding, it refers to "judicial review of *such a denial*"—again referring to a single act, and again making clear that the earlier reference to "a determination respecting an application" describes the denial of an individual application. We therefore agree with the District Court's and Court of Appeals' reading of this language as describing the process of direct review of individual denials of SAW status, rather than as referring to general collateral challenges to unconstitutional practices and policies used by the agency in processing applications. (emphasis in original).

*McNary v. Haitian Refugee Center, Inc.,* 498 U.S. at 491–92, 111 S.Ct. at 896.

Similarly, the critical words of Section 205(g) describe the provision as referring to judicial review of "any final decision" made after "a hearing" at which an individual was "a party", irrespective of "the amount in controversy." These words describe a "single act rather than a group of decisions or a practice or procedure employed in making decisions." Moreover, Section 205(g), prescribes that the findings of the Secretary shall be conclusive where "a claim has been denied" or when the Secretary renders "a decision" which is adverse to "an individual who was a party to the hearing before the Secretary." Again, these words refer to "a single act", namely the "denial of an individual application." Therefore, as the Supreme Court concluded in *McNary v. Haitian Refugee Center*, the language of Section 205(g) describes the process of direct review of individual denials of social security benefits, rather than refer to general collateral challenges to unconstitutional practices and policies used by the agency, or the ALJ, in processing applications for benefits.

The majority summarily dismisses the analogy between *McNary* and the present case by stating that *"McNary* concerned a different question under a different statute." Majority op at 1342. Of course, majority is superficially correct. *McNary* did involve a different statute. But that statute is remarkably similar to Section 205(g). Like Section 205(g), that statute provides for limited judicial review of an agency's denial of an individual application. The Supreme Court, however, held that the statute described "the process of direct review of individual denials [ ], rather than refer[ed] to general collateral challenges to unconstitutional practices used by the agency in processing applications." *McNary,* 498 U.S. at 492, 111 S.Ct. at 888. Moreover, contrary to the majority's assertion, the Supreme Court in *McNary* faced precisely the same before this court today; namely the standard of review to be exercised by federal courts in "collateral challenges to unconstitutional practices and policies used by an agency in processing

applications." *Id.*[1] The majority can point to no language in section 205(g) which expressly states that, even in collateral class actions, federal district courts are limited to the Secretary' findings of fact and have no power to engage in independent fact-finding. Instead, the majority grasps unto an isolated phrase in the whole of section 205(g) and uses that disconnected phrase to expand the meaning of section 205(g) without any evidence that Congress intended the statute to have such broad application.

### B.

The second ground upon which the majority relies is our decision in *Hummel v. Heckler,* 736 F.2d 91 (3d Cir.1984). According to the majority, in *Hummel* "we stated flatly that 'the district court have no fact-finding role in Social Security cases'." Majority Op at 1338. But, as with its selective reading of the language of section 205(g), the majority again quotes out of context this court's statement in *Hummel.* Only one paragraph prior to the statement that "district courts have no fact finding role in Social Security cases", the court explicitly wrote that "district courts have no fact-finding role in social security *review* cases." In other words, the statement that district courts have no fact-finding role in social security cases must be read to refer obviously to social security individual review cases.

Indeed *Hummel* itself was an individual review case. To fully understand the nature of the case, a careful examination of the facts and the holding is necessary.

The *Hummel* panel described the case as follows:

Jeannette E. Hummel appeals from a summary judgment in favor of the Secretary of Health and Human Services in her action, pursuant to 42 U.S.C. § 405(g) (Sup. V 1981), for review of the denial of disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385 (1976 Supp V 1981). Hummel contends that the district court erred in concluding that the Secretary's decision is supported by substantial evidence. Alternatively, she contends that the district court erred in ruling on the Secretary's motion for summary judgment while her motions to compel discovery were outstanding. Those discovery requests sought information concerning possible bias of the administrative law judge who presided at her hearing.

*Hummel,* 736 F.2d at 92.

In other words, in *Hummel* plaintiff had made two separate arguments before the district court. First, plaintiff claimed that the Secretary's denial of her benefits was not supported by substantial evidence. Second, plaintiff requested further discovery so as to be able to show that the ALJ who ruled on her claims for benefits was biased against her. Plaintiff argued that proof of bias on the part of the ALJ would demonstrate that the denial of her benefits was not supported by substantial evidence. The district court rejected both of plaintiff's arguments and granted summary judgment in favor of the Secretary. The court concluded that the Secretary's findings were supported by substantial evi-

---

**1.** The majority also mentions in a footnote that "*McNary* distinguished *Heckler v. Ringer,* [466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)], which involved Section 205(g)." The majority does not explain why the fact that *Heckler v. Ringer* was distinguished in *McNary* should be relevant here. The truth is, it is not at all relevant. In *Heckler v. Ringer,* four plaintiffs sued to establish a right to reimbursement under the Medicare Act for a particular form of surgery. Plaintiffs sought judicial review of the Secretary's denial of reimbursement for the surgery without exhausting their administrative remedies as required by Section 205(g). The district court dismissed for lack of jurisdiction under Section 205(g) and plaintiffs appealed.

Plaintiffs argued that they were not required to exhaust administrative remedies because their claim was not an individual review case. The Supreme Court disagreed and found that at bottom plaintiffs' claim was not a collateral challenge but an individual review claim. *Id.* 466 U.S. at 614, 104 S.Ct. at 2021. In *McNary,* the Secretary argued that *Heckler v. Ringer* supported its position that the court should exercise limited review of plaintiffs' claim. The court distinguished *Heckler v. Ringer* by noting that plaintiffs' claim in that case was not collateral to their claims for benefits. *McNary,* 498 U.S. at 494–95, 111 S.Ct. at 897. Here, plaintiffs' claim is collateral to their claims for benefits.

dence. The court also concluded that proof of bias on the part of the ALJ would be irrelevant because the objective medical evidence contained in the administrative record more than amply supported the Secretary's conclusion that the plaintiff was not entitled to benefits.

On appeal to this court, plaintiff reiterated the same two arguments made before the district court. As to the first argument, we agreed with the district court and held that "in the absence of a finding of bias, the Secretary's decision denying benefits [was] supported by substantial evidence." *Id.* at 95. However, as to plaintiff's second argument, we reversed the district court and held that "where information relating to a contention bearing on the fundamental fairness of the agency hearing is in possession of the government, discovery is available to the section 405(g) plaintiff so that she can attempt to convince the district court that a remand to the Secretary for the taking of new evidence is appropriate." *Id.* In other words, instead of finding that allegations of bias were irrelevant because of the "objective" nature of the medical evidence, we reasoned that such allegations, if proven true, would be highly relevant inasmuch as bias on the part of the ALJ may affect the sort of "objective" evidence which ends up or does not end up in the record. Thus, we concluded as follows:

> "We hold, therefore, that in the absence of a finding of bias, the Secretary's decision denying benefits is supported by substantial evidence. In the event that a finding of bias is made on remand, a new hearing must be held before an administrative law judge to determine the merits of Hummel's claim."

*Id.*

In short, even though the claimant in *Hummel* had made a claim that she was denied benefits because the ALJ judge may have been biased against her, it was clear that she was seeking to challenge the merits of the denial of her benefits. Claimant in *Hummel* claimed that the Secretary's denial of benefits was not supported by substantial evidence and sought to so prove

by showing that the ALJ who ruled on her case may have been biased against her. Claimant did not request the court to assume jurisdiction over her case or to make independent findings regarding the bias of the ALJ. Claimant's argument that the ALJ may have been biased was simply a method of proving that the district court should have reversed the denial of her benefits because, pursuant to section 205(g), the findings of the Secretary, as reflected in the ALJ's ruling, was not supported by substantial evidence. As such, *Hummel* was an individual review and not a collateral class action case.

The majority here writes:

> we made perfectly clear in *Hummel* that the district court could not make findings regarding the ALJ's alleged bias but could at most remand the case to the Secretary so that the Secretary could make such findings.

Majority Op at 1338.

That is a significant expansion of our careful holding in *Hummel*. As stated in detail above, we held in *Hummel* that the district court had no independent fact-finding role in an individual review case and, as such, could not make findings of its own regarding the alleged bias of the ALJ. We remanded the case because remands to the Secretary in social security cases are common. Indeed, since at the time of Hummel's appeal the administrative record contained no findings regarding the alleged bias of the ALJ, once we reasoned that proof of the ALJ bias was relevant in determining whether the Secretary's denial of benefits to Hummel was supported by substantial evidence, we had no choice but to remand the case to the Secretary for fact-finding. Thus, contrary to what the majority suggests, we certainly did not hold that the district court may never, even in collateral class action cases, make independent findings regarding the alleged bias of an ALJ. The majority has taken a relatively straightforward individual review case which we remanded to the Secretary for further fact-finding and transformed it into a sweeping declaration on the role of federal district courts in classwide constitutional

and statutory challenges to the policy and practice of an administrative agency.[2]

### C.

The third ground upon which the majority relies is its conclusion that no decision from the Supreme Court or this court has ever expressly held that the district court has the authority to make findings regarding the alleged bias of an ALJ. Instead, according to the majority, in the only instances in which the district courts engaged in fact-finding, the fact in question concerned the existence of a hidden unlawful agency or practice—a question on which the Secretary could not function as an impartial fact-finder. Majority Op at 1342. None of the cases cited by the majority, indeed none of the cases cited by plaintiffs or by the Secretary, have ever held that the fact-finding role of the district court in social security cases is predicated on whether the Secretary can be expected to be an impartial fact-finder. The only support the majority cites for this broad distinction is "[t]he ancient maxim that no one may be judge in his own cause." Majority Op at 1342. Publilius Syrus, who first uttered that maxim in the first century B.C., was no doubt right. But the wisdom of the maxim notwithstanding, it cannot serve as a substitute for judicial precedent.

In any event, the maxim itself is not applicable to the present case. The reasoning of the majority seems to be that when the Secretary adopts a policy or engages into a practice, the Secretary cannot be an impartial fact-finder in determining whether that policy or practice is unconstitutional or unlawful. The majority does not explain why this is so, but one supposes that the majority must mean that since the policy or practice is the Secretary's own, it will lose all objectivity in reviewing its legality. That reasoning is based on a somewhat

unrealistic view of administrative agencies. It is as if the majority suggest that the Secretary, as an individual, adopts the policy and the Secretary, as an individual, ends up reviewing its legality. In other words, in the majority's view, the Secretary runs every aspect of the agency, not only in name but also in fact. There is absolutely no evidence that this is the case. Indeed it may very well be that the branch of the agency which adopts the policy is not the same branch which ultimately reviews its legality.

Moreover, even if one begins to imagine that the majority is correct in assuming that the Secretary develops a strange attachment to its own policies and practices, thereby rendering it incapable of being an impartial fact-finder in ruling on their legality, the fact remains that the same reasoning can be applied to an allegation of bias by an ALJ. The same Secretary that adopts a policy or practice is the same Secretary that supervises ALJs. If, as the majority maintains, the Secretary is incapable of being an impartial fact-finder in reviewing the legality of its policies, there is no reason to think that the Secretary will be any more capable of being an impartial fact-finder in reviewing allegations of unlawful bias on the part of its ALJ. The majority's argument seems to be that the Secretary is unable to be an impartial fact-finder with regard to the agency's unlawful policies and practices because the Secretary is not separate from the agency. If that is so, then the same can be said about the relationship between the Secretary and the ALJ. The Secretary, the ALJ and various other branches of the agency all constitute part of the same bureaucracy. To separate the Secretary, the agency, and the ALJ is to insist on pure fiction. And as Justice Holmes would say, "fiction always is a poor ground for changing substantial rights." *Haddock v. Haddock*, 201 U.S.

---

**2.** The majority tries to gloss over the distinction between individual review cases and collateral class actions by concluding: "*Hummel* was, to be sure, an individual review case, not a class action, but neither Section 205(g) nor *Hummel* draws any distinction between individual review cases and class actions." Majority Op at

1339. This is an indefensible statement given the Supreme Court's unequivocal statement that social security collateral class actions are "materially distinguishable" from individual review cases. *Bowen v. City of New York*, 476 U.S. at 484, 106 S.Ct. at 2032.

562, 630, 26 S.Ct. 525, 552, 50 L.Ed. 867 (1906) (Holmes, J., dissenting).

### D.

The fourth and final ground upon which the majority relies to explain its holding is that this court should be reluctant to allow the district court to make independent findings of bias on the part of an ALJ because "such fact-finding would have a deleterious effect on the independence of ALJs and thus on the administrative process." Majority Op at 1344 (emphasis in original). According to the majority, "it has long been recognized that attempts to probe the thought and decision making processes of judges and administrators are generally improper." Majority Op at 1344. This is because "efforts to probe the mind of an ALJ through such evidence pose a substantial threat to the administrative process." Majority Op at 1345. Moreover, the majority continues, if the sort of trial and discovery sought by the plaintiffs in this case is allowed, "[t]his would seriously interfere with the ability of many ALJs to decide the cases that come before them based solely on the evidence and the law." Majority Op. at 1345.

The picture the majority paints is one where social security ALJs reach the decision to award or deny benefits to claimants through an almost "mysterious" process which is not susceptible to judicial review. The majority lists a parade of horribles which will inevitably and inexorably unfold if district courts are permitted to make independent findings of whether social security ALJs deny claimants benefits on the basis of unlawful biases. The majority reasoning is based on its determination that courts may not be permitted "to probe the thinking and decision making processes of an officer occupying a position described by the Supreme Court as 'functionally comparable' to a judge." Majority Op at 1344.

The Supreme Court may have described ALJs as functionally comparable to judges, but the court never held that ALJs *are* federal judges. The independence guaranteed to Article III judges is rooted in the separation of powers doctrine embodied in the Constitution of the United States. By contrast, the independence afforded to ALJs, whatever its contours may be, is not rooted in the constitution, but rather is a function of the need for administrative efficiency, the recognition of administrative expertise, and the need to build an adequate administrative record for judicial review. *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).[3]

Accordingly, the independence enjoyed by ALJs is not without bounds. For one thing, the need for administrative efficiency is not necessarily controlling in actions where plaintiffs challenge the very legality of the agency's policy or practice. *Bowen v. City of New York*, 476 U.S. at 485, 106 S.Ct. at 2033. For another thing, the recognition of administrative expertise, and the need to build an adequate administrative record for judicial review are not applicable when, as in the present case, plaintiffs' does not seek to have the court review the very area in which the agency is deemed to be expert. *Id.*

This is of course amply demonstrated by the facts of the present case. The Social Security Administration simply does not have any expertise in reviewing claims of general bias. Granted the agency has in place regulations to determine claims of individual bias. 20 C.F.R. §§ 404.940, 416.1440. But those regulations are obviously not designed to handle claims of general bias. The Secretary in fact acknowledged that the exiting regulations were not adequate in reviewing claims of general bias. If they were, the Secretary would have relied on them rather than instituting an "ad hoc" method in reviewing plaintiffs'

---

**3.** The Supreme Court has described the contours of the independence afforded to ALJ in terms of a rationale for the administrative exhaustion doctrine:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct it errors, to afford the parties and the courts the benefit of its expertise, and to compile a record which is adequate for judicial review. *Salfi*, 422 U.S. at 765, 95 S.Ct. at 2466.

claim in this case. Moreover, the ad hoc procedure set up by the Secretary is unlikely to produce an adequate record for judicial review. For example in the case of the Secretary's examination of allegations of bias on the part of ALJ Rowell, the ad hoc procedure was not established by regulation or statute; it lacked any procedural rules; it lacked discovery mechanisms; and they were no parties and no assignment of burden of proof. In short, the agency does not have the expertise in dealing with claims of general bias, and there is no reason to believe that the ad hoc procedure it has devised will produce an adequate record for judicial review.

Of course, I am convinced that the majority of ALJs perform the duties of their office consistent with the statute they are charged to execute and in compliance with the constitution. But I cannot accept the majority's position that the exercise of independent review by the district courts on the question of general bias by ALJs will have a deleterious effect on the administrative process. If anything, such an independent review can only strengthen public confidence in the administrative process. And, an administrative process which enjoys public confidence will in the end function more efficiently.

Having stated the reasons why I believe the majority's reasoning is flawed, I now turn to the discussion of how I submit this case should have been decided.

## II.

The Supreme Court established in *Bowen v. City of New York* that district courts hear two types of Social Security cases on appeal: individual review of denials of benefits and collateral class claims. *Id.* 476 U.S. at 484, 106 S.Ct. at 2032. As the court stated, individual review cases are "materially distinguishable" from collateral class claims. *Id.* An individual review case involves an appeal to the district court from a final decision of the Secretary denying Social Security or SSI disability benefits. The issue before the district court in an individual review case is whether the claimant is entitled to benefits. The district court, pursuant to section 205(g), may affirm the denial of benefits, reverse the denial of benefits, or remand the case to the Secretary for further fact-finding. Moreover, the district, in an individual review case, must accept as conclusive all findings of fact by the Secretary if supported by substantial evidence.

By contrast, a collateral claim is an action in the district court challenging a policy or practice of the agency as unconstitutional or statutorily unlawful, without challenging the underlying merits of their denial for benefits. The issue before the district court in a collateral claim is whether the challenged practice or policy is indeed unlawful. The court never considers the question of whether plaintiffs are actually entitled to benefits because a collateral claim means that the action is separate from the merit disability determination conducted by the agency.

While *Bowen v. City of New York* clearly established the distinction between individual review cases and collateral claims, it did not explicitly address the issue of the standard of review to be applied by district courts in collateral claims. However, a careful reading of *Bowen v. City of New York*, demonstrates that it provides strong and convincing support for the conclusion that district courts have the authority to conduct independent fact-finding trials in collateral claims.

## A.

*Bowen v. City of New York* involved two distinct programs of the Social Security Act. The first program, the Social Security Disability Insurance Program, provides benefits to persons who have paid into the program and have become mentally or physically disabled. The second program, the Supplemental Security Income Program, provides benefits to indigent disabled persons. To be eligible for benefits under either program, a claimant must be found to under a disability of such severity that claimant is unable to engage in substantial work of any kind. Pursuant to statutory authority, the Secretary adopts regulations for both programs to evaluate

and process applicants for disability benefits.

In *Bowen v. City of New York*, a class of plaintiffs, composed of claimants who were denied or were about to be denied disability benefits, brought an action in the district court against the Secretary, alleging that the Secretary had adopted an unpublished policy under which deserving claimants were denied benefits. Plaintiffs claimed that the policy was implemented through the use of secret internal memoranda and was never published in the Federal Register. Plaintiffs argued that failure to make the policy known denied class members due process of law. Following a 7-day trail the district court found, not only that the Secretary had followed a covert policy, but also that the policy actually violated the Social Security Act. The Court of Appeals for the Second Circuit affirmed the district court and the Secretary appealed to the Supreme Court.

Before the Supreme Court, the Secretary challenged the judgement of the Court of Appeals on jurisdictional grounds. The Secretary's jurisdictional argument was twofold: first the Secretary argued that certain members of the class, whose claim for benefits had been finally denied, had failed to bring their action in the district court within 60 days of the final decision; second, the Secretary argued that other members of the class had failed to exhaust administrative remedies before suing in the district court. The Supreme Court rejected both of the Secretary's arguments. The court held that equitable tolling of the 60-day period was proper as to those plaintiffs who had failed to seek judicial period within the statutory period. The court also held that it was proper to waive the requirement of exhaustion of administrative remedies as to those plaintiffs who had not exhausted their administrative appeals. For purposes of my analysis, the relevant portion of the court's opinion is its discussion regarding waiver of the requirement of exhaustion of administrative remedies.

The court reasoned as follows: Normally only a final judgment from the Secretary is appealable to the district court. *Id.* at 482,

106 S.Ct. at 2031. The final decision requirement consists of two elements. *Id.* The first element is that "the claims for benefits must have been presented to the Secretary." *Id.* at 483, 106 S.Ct. at 2032. *quoting Matthews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The second element is that "the administrative remedies prescribed by the Secretary must be exhausted." *Id.* at 482–83, 106 S.Ct. at 2031.

Normally, the Secretary has discretion to waive the exhaustion requirement. But, "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.* at 483, 106 S.Ct. at 2031. Two factors are significant in determining whether a case is such that deference to the agency's judgment as to the exhaustion requirement is inappropriate. The first factor is that "the constitutional challenge brought [must be] 'entirely collateral to [a] substantive claim of entitlement'." *Id.* The second factor is that "full relief cannot be obtained at a postdeprivation hearing." *Id.*

## B.

The same two factors which determine whether district courts should waive the requirement of exhaustion of administrative remedies in collateral claims may also be used to determine whether district courts should exercise restricted or de-novo review of an agency's findings of facts in collateral claims.

The reason is this: the doctrine exhaustion of administrative remedies and the doctrine of restricted review of an agency's findings of fact are driven by the same considerations. Specifically, claimants are required to exhaust administrative remedies because, by claimants exhausting their administrative appeals, the administrative machinery "functions efficiently," the agency has the opportunity to "afford the parties the benefits of its experience and expertise," and the agency is able to "compile a record which is adequate for judicial review." *Salfi*, 422 U.S. at 765, 95 S.Ct. at 2467. Similarly, courts exercise restricted

review of an agency's finding because to exercise de-novo review of the agency's findings of fact would disturb the efficient functioning of the agency, would unduly disregard the expertise and experience of the agency, and would merely duplicate an already complete record.

Therefore, one can reasonably conclude that, if application of the doctrine of exhaustion of administrative remedies and the doctrine of restricted review of an agency's findings of fact are driven by the same factors, then the non-application of these two doctrines should also reasonably be driven by the same factors. In *Bowen v. City of New York*, the Supreme Court stated that district courts may waive the requirement of exhaustion of remedies when the constitutional challenge brought is collateral to a substantive claim of entitlement, and when full relief cannot be obtained at the level of an administrative hearing. *Bowen v. City of New York*, 476 U.S. at 483, 106 S.Ct. at 2031. Similarly, district courts need not apply restricted review to an agency's findings of fact but may instead exercise de novo fact-finding review when the constitutional challenge brought is collateral to the substantive claim of entitlement, and when full relief cannot be obtained at the level of an administrative hearing.

### C.

The present case satisfies those two factors. As to the first factor, plaintiffs claim that an ALJ denies benefits to deserving claimants on the basis of an unconstitutional and statutorily unlawful general bias. Plaintiffs do not seek to have the district court review the substantive merits of the denial of their benefits. Therefore plaintiffs constitutional challenge is "entirely collateral to a substantive claim of entitlement."

As to the second factor, plaintiffs are unlikely to obtain full relief at the level of an administrative hearing. I have already described above that the Secretary does not have any regulation or process in place for handling claims of general bias as opposed to claims of individual bias. I have also described above how the ad hoc procedure the Secretary has devised is inadequate to afford plaintiffs a full and fair hearing on the issue of general bias on the part of ALJ Rowell. The district court was correct when it thoughtfully observed that "the agency cannot properly police itself in a case that has been certified as a class action involving a claim of generalized bias on the part of an Administrative Law Judge especially where the class consists of approximately 700 plaintiffs." District court opinion at 12.

### D.

In the final analysis, when all else has been said, it must be remembered clearly what plaintiffs are claiming here. *Plaintiffs claim that, pursuant to the due process clause of the Fifth Amendment to the United States Constitution, they have the right to have their petition for social security benefits heard by an impartial administrative law judge.* Plaintiffs claim that their due process rights have been violated because their applications for benefits were denied by an ALJ who possessed a general bias against a class of plaintiffs because of their race and their economic status. But more importantly, plaintiffs claim that their rights have been violated because the agency is simply not equipped to police claims of general bias. The determination of whether or not plaintiffs' constitutional right has been violated is the province of the courts and not that of an agency. *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. at 494–95, 111 S.Ct. at 897. Indeed, the decision of the Supreme Court in *McNary v. Haitian Refugee Center, Inc.* is highly relevant to the present case, for it also deals with the question of whether district courts ought to exercise de novo—as opposed to limited—review of classwide collateral constitutional challenges to an agency's practice or policy. That case involved a challenge to the manner in which the Immigration and Naturalization Service (INS) was administering the Special Agricultural Workers (SAW) provisions of the Immigration Reform Control Act of 1986. The SAW provisions of the Act required the Attorney General to ad-

just the status of certain alien farmworkers from unlawful aliens to "Special Agricultural Workers" (SAW) lawfully admitted temporary and eventually permanent residents. 8 U.S.C. § 1160(a)(1), (a)(2).

Pursuant to statutory authority, the INS promulgated regulations to determine the eligibility of alien farmworkers for SAW status. Essentially the INS determined eligibility for SAW status based on a personal interview with each applicant. Applicants were required to bring to the interview supporting documents, such as affidavits from employers. If an applicant was found ineligible for SAW status, the Immigration and Nationality Act (INA) barred judicial review of the denial except in the context of judicial review of a deportation order; a review conducted by the court of appeals, not the district court. 8 U.S.C. § 1105(a). Moreover, the INA provided that, in reviewing a denial of SAW status, the court of appeals is restricted to the administrative record and that "the findings of fact contained in such a record [are] conclusive unless the applicant can establish abuse of discretion or that the findings are contrary to clear and convincing facts contained in the record as a whole." 8 U.S.C. § 1160(e)(3)(B).

In 1988, a group of unsuccessful SAW applicants brought a class action in the district court for the Southern District of Florida against the INS. Plaintiffs alleged that the interview process was conducted in an arbitrary fashion that deprived applicants of the due process guarantees of the Fifth Amendment to the Constitution. Among the procedures challenged by plaintiffs was a practice by the INS whereby interviewers would "routinely discredit supporting affidavits from a secret list of employers." *McNary v. Haitian Refugee Center, Inc.,* 498 U.S at 489, 111 S.Ct. at 894 n. 9. The district court found that it had jurisdiction over the class action and, after a de novo trial, ruled on the merits that the practices of the INS were unconstitutional. The Court of Appeals for the Eleventh Circuit affirmed and the INS filed a petition for certiorari to the Supreme Court solely on the question of whether the district court had jurisdiction over the action.

Before the Supreme Court, the INS made two jurisdictional arguments. First, the INS argued that, pursuant to 8 U.S.C. § 1105(a), the district court did not have jurisdiction over plaintiffs' claim. Second, the INS argued that, even if the district court had jurisdiction over the claim, pursuant to 8 U.S.C. § 1160(e)(3)(B), the court did not have the authority to conduct de novo review of the agency's findings, but was limited to the administrative record, and that the findings of fact in the record were conclusive unless applicants could establish abuse of discretion.

The Supreme Court rejected both arguments and affirmed the court of appeals. *Id.* at 498–99, 111 S.Ct. at 899. As to the argument that the district court's review was limited to an abuse of discretion standard, the court held as follows:

> [T]he abuse of discretion standard of judicial review under § 210(e)(3)(B) would make no sense if we were to read the Reform Act as requiring constitutional and statutory challenges to INS procedures to be subject to its specialized review provision. Although the abuse-of-discretion standard is appropriate for judicial review of administrative adjudication of the facts of an individual application, such a standard does not apply to constitutional or statutory claims, which are reviewed de novo by the courts.

*Id.* at 493, 111 S.Ct. at 897.

The same factual and legal matrix exists in the present case. *Haitian Refugee Center,* involved a statutory scheme which provided for limited judicial review of "an administrative adjudication of the facts of an individual application for SAW status." *Id.* Similarly, here this case involves a statutory scheme which provides for limited judicial review of an "administrative adjudication of the facts of an individual application" for social security benefits. In *Haitian Refugee Center,* plaintiffs brought a classwide collateral challenge to the procedures devised by INS to determine eligibility for SAW status as violative of their due process rights under the Fifth Amendment to the Constitution. Similarly, here plaintiffs have brought a classwide collateral challenge to the practice of the Secretary—

as reflected by the general bias of an ALJ and as reflected in the lack of adequate procedure by the Secretary to deal with general bias—to determine eligibility for benefits as violative of their due process rights under the Fifth Amendment to the Constitution. In *Haitian Refugee Center*, plaintiffs challenged the practices of the INS without challenging the underlying merit of their SAW applications. Similarly, here plaintiffs challenge the bias of an ALJ and the Secretary's lack of procedures for dealing with general bias without challenging the underlying merits of their denial of benefits. In *Haitian Refugee Center* plaintiffs alleged that interviewers from the INS kept a secret list of employers whose affidavits were routinely rejected. Similarly, here plaintiffs claimed that an ALJ routinely denied their claims if they belong to a particular economic group. In *Haitian Refugee Center*, the Supreme Court held that although limited judicial review is appropriate for review of "an administrative adjudication of the facts of an individual application" such limited review "does not apply to constitutional or statutory claims, which are reviewed de novo by the courts." *Id.* Similarly, here the district court was correct in finding that, although limited review is appropriate for review of an administrative adjudication of an individual application or benefits, such limited review does not apply to collateral constitutional and statutory claims, which are reviewed de novo by the courts.

### III.

By now, to say that administrative agencies exercise broad discretionary power over a wide range of private interests with only intermittent control by the three branches of government is to state a rather obvious proposition. *See* Sunstein, *Interest Groups In American Public Law*, 38 Stan.L.Rev. 29, 60 (1985); Stewart, *The Reformation of American Administrative Law*, 88 Harv.L.Rev. 1669, 1716 (1975); *See also* R. Litan & W. Nordhaus, *Reforming Federal Regulation* (1983). In recent years, courts have moved to make the administrative process more accountable and responsive to the public. This movement

began with the judicial creation of the "hard-look doctrine." *See, Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 851 (D.C.Cir.1970. Currently, the hard-look doctrine has four principal elements: 1) the enlargement of the class of interests entitled under the due process clause to an administrative hearing before agency infringement of those interests; 2) the establishment of a presumption in favor of judicial review of agency action or inaction; 3) more scrutinizing judicial review based upon a detailed agency justification for its decision; and 4) the enlargement of the class of interests entitled to judicial review of agency action. *See,* Stewart, *The Reformation of American Administrative Law,* 88 Harv.L.Rev. at 1716. Today the majority opinion has abandoned the hard-look doctrine. Instead, it has begun to fashion what can only be called the "quick-glance doctrine."

Justice Cardozo once wrote:

The great ideals of liberty and equality are preserved against the assaults of opportunism, the expediency of the passing hour, the erosion of small encroachments, the scorn and derision of those who have no patience for general principles, by enshrining them in constitutions, and consecrating to the task of their protection a body of defenders.[4]

In this country courts in general—and federal courts in particular—have been "consecrated" the defenders of constitutional rights against the assaults, encroachments and biases of individuals, be they holders of elected office or recipients of bureaucratic positions. What the majority proposes to do in its holding is effectively to have courts take a back seat to bureaucratic agencies in protecting constitutional liberties. This—even if the majority couches it in terms of administrative efficiency and expertise—is a radical and unwise redefinition of the relationship between federal courts and federal agencies, likely to have an effect far beyond the question of the standard of review exercised by federal courts in collateral actions alleging unlawful bias on the part of a social security administrative law judge.

---

4. Cardozo, *The Nature of the Judicial Process,* p. 17.

**1360**

For the foregoing reasons I respectfully dissent.

## SUR PETITION FOR REHEARING

April 7, 1993.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and LEWIS, Circuit Judges.

The petition for rehearing filed by appellant in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the Court in banc, the petition for rehearing is denied.